636 So.2d 999 (1994)
STATE of Louisiana
v.
Kenneth R. HILL.
No. 93-KA-405.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 1994.
*1000 John M. Mamoulides, Dist. Atty., James Williams, Michael Reynolds, Dorothy A. Pendergast, Asst. Dist. Attys. (Louise Korns, of counsel), Gretna, for plaintiff-appellee.
Ginger Berrigan, Indigent Defender Program, Parish of Jefferson, Gretna, for defendant-appellant.
Before KLIEBERT, GAUDIN and GOTHARD, JJ.
GAUDIN, Judge.
Kenneth Hill was found guilty of second degree murder by jury in the 24th Judicial District Court. He was sentenced to the mandatory term of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Hill was convicted of the June 26, 1990 fatal shooting of Johnny Gilmore in Harvey, Louisiana.
On appeal, Hill contends that:
(1) the evidence was insufficient to sustain a conviction,
(2) the trial judge did not give a correct charge regarding permissible verdicts,
(3) the trial judge erred in not reading a charge on negligent homicide submitted by the defense, and
(4) the trial judge erroneously excluded relevant and trustworthy statements by a witness who could not be located for the trial.
We affirm Hill's conviction, finding no reversible error in his four assignments of error. There are no errors patent.

ASSIGNMENT NO. 1
In this assignment of error, Hill argues that the evidence, viewed in the light most favorable to the prosecution, does not support a second degree murder conviction. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982); and State v. *1001 Burrow, 565 So.2d 972 (La.App. 5 Cir.1990), writs denied at 572 So.2d 60 (La.1991).
On June 26, 1990, Hill, then 18 years of age, and several companions were walking along West Chelsea Street in Harvey, Louisiana. The victim and several of his friends, including Paul Jackson, were sitting on cars talking in front of 1556 West Chelsea. According to Jackson, Hill's group, none of whom he knew, stopped in front of the house where Jackson lived. Jackson walked over holding a broken toy gun in his hand which resembled a .32 caliber pistol and asked them to leave. The area, he said, was "hot," i.e., a drug area, and that his aunt, who lived at 1556 West Chelsea, did not like traffic around her house.
Hill did walk away but he returned shortly with a .38 caliber revolver. Jackson, Gilmore and others ran from Hill, who fired at least four shots. One of the bullets struck the fleeing Gilmore in the head, killing him instantly.
According to Hill's trial testimony, he was aggravated by the confrontation with the Jackson-Gilmore group. He obtained a pistol, he said, because he thought the other group had weapons. Although he was armed when he returned to where Jackson, Gilmore and their friends were on West Chelsea Street, Hill said that he did not intend to shoot at anyone.
When Hill reached the spot where Jackson, Gilmore and the others were, he (Hill) said that he heard what sounded like a shot. Hill pulled out his pistol and everyone scattered. Gilmore ran into a residential alleyway where he was struck.
Hill testified that he shot in the air because he was frightened. He said he did not aim at Gilmore or anyone else and that when his pistol was empty he ran away.
The bullet recovered from the victim was in two pieces. The most likely explanation for this, Hill asserts, is that this bullet hit something else first before ricocheting into Gilmore's head.
Second degree murder, LSA-R.S. 14:30.1(A)(1), is the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm. Specific intent exists when circumstances indicate that a defendant actively desired the prescribed criminal consequences to follow his act. Specific intent is a state of mind and as such may be inferred from the state of affairs and from the actions of the accused. See LSA-R.S. 14:10(1); State v. Graham, 420 So.2d 1126 (La.1982); and State v. Edge, 504 So.2d 1169 (La.App. 5 Cir.1987), writs denied at 507 So.2d 226 (La.1987).
The determination of whether the requisite intent is present is for the trier of fact. A review of the correctness of this determination is guided by the Jackson v. Virginia, supra, standards.
Here, there was some evidence supporting Hill's testimony about firing in the air. Two of the bullets hit a second story apartment. One witness, however, 20-year-old Thomas Wooden, said that the only shots fired were by Hill. Wooden was standing right next to Gilmore in the alleyway when he (Gilmore) was hit. In fact, Gilmore, after being struck, fell into Wooden's arms. Wooden said that Hill was in the same alleyway and at least one shot was sent down the alleyway toward where he (Wooden) and Gilmore were. Several other bullets, Wooden said, went "... probably over the fence," which was close to where Wooden and Gilmore were after Gilmore had tried unsuccessfully to have a house door opened so he could go inside. After catching Gilmore, Wooden laid Gilmore down, jumped over the fence and ran home.
Eleven of the 12 jurors concluded, from the facts and circumstances of this unfortunate incident, that Hill did have specific intent necessary for second degree murder. There had been no fight or serious confrontation before the shooting and there was no real proof of anyone firing a shot before Hill started shooting. After the initial meeting, Hill left and then returned with a pistol. He began firing without apparent provocation.
The state produced two expert witnesses to offset Hill's contention that the bullet which killed Gilmore was a ricochet. Louise Walzer, the senior firearms examiner at the Jefferson Parish Sheriff's Office crime laboratory, *1002 and Dr. Frazer MacKenzie, who performed the autopsy, testified that the bullet extracted from Gilmore's head, although in two pieces, struck the victim without hitting anything else first whereas several other bullets, recovered at the scene and evidently fired from Hill's gun, were badly damaged.
Actually, whether or not the bullet which hit Gilmore was a ricochet was a factual matter argued and submitted to the jury for determination. This issue as well as specific intent were resolved adversely to the defense.

ASSIGNMENTS NOS. 2 AND 3
In these assignments of error, Hill objects to the jury charge. Initially, we note that there was only a general objection by defense counsel, who stated:
"The only objections I would have to any charges would be contained in the difference between ... my proposed set of jury charges, which is filed into the record, and those which are not contained in the ultimate jury charge."
In State v. Henry, 449 So.2d 486 (La.1984), the Supreme Court of Louisiana held that the failure to specify the grounds of an objection, thereby preventing the trial judge from correcting any error, should prevent a convicted defendant from raising the issue on appeal.
Nonetheless, Hill now argues that the trial judge erred in (1) failing to instruct the jury regarding the full definition of manslaughter and (2) refusing to charge the jury with the definition of negligent homicide.
Even if these unspecified objections were validly preserved for appeal, we find that any defect in the trial judge's jury charge did not affect Hill's substantial rights.
Manslaughter (LSA-R.S. 14:31) has two general definitions:
(1) when the offense is committed in sudden passion or heat of blood immediately caused by sufficient provocation, or
(2) a homicide committed without any intent to cause death or great bodily harm when the offender is engaged in the perpetration or attempted perpetration of certain felonies or of any intentional misdemeanor directly affecting the person.
Manslaughter is a lesser offense responsive to second degree murder. The trial judge read (1), above, but not (2), likely being of the opinion that specific intent was what Hill's defense was based on and that (2) was not relevant. In State v. Henry, supra, the Supreme Court stated:
"... although the court must charge the jury of the law applicable to lesser included offenses ... the charges must be pertinent, there must be evidence which would support a conviction of the lesser offense ... A trial judge is required to charge the jury as to the law applicable to the case, under which he is required to cover every phase of the case supported by the evidence ...
"The majority of other jurisdictions provide that there is no duty to instruct on lesser offenses in the absence of evidence tending to prove such offenses. The process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence."
Hill's defense was a lack of specific intent. By opening and closing arguments and by the trial judge's charge, the jury's attention was focused on specific intent or a lack thereof.
Had Hill's counsel been precise in his objection, the trial judge may have read the second segment of the manslaughter definition; however, because a specific objection was not made, because there was no evidence or proof supporting the omitted definition of manslaughter and because the state argued only that Hill had specific intent to kill or inflict great bodily harm, Hill was not deprived of any substantial right.
Unlike manslaughter, negligent homicide (LSA-R.S. 14:32) is not responsive to second degree murder and does not require specific intent. There was no error in the trial judge's failure to read a definition of negligent homicide inasmuch as no precise objection was made by defense counsel and *1003 there was a lack of serious proof in support of negligent homicide.

ASSIGNMENT NO. 4
Libby Sylve gave a written statement to investigating police officers three days after Gilmore's shooting; however, she couldn't be located for trial and her statement was ruled inadmissible by the district judge. This, Hill argues, was reversible error.
Sylve was at the scene at the time of the initial encounter and she was there when the shooting took place. Her statement favored Hill in several respects. She said that Jackson was a drug dealer, that it appeared that Jackson had two guns, that she heard a shot before Hill opened fire with his pistol and that Gilmore was shot "by accident."
Hill cites and relies on State v. Gremillion, 542 So.2d 1074 (La.1989), wherein a conviction for manslaughter was reversed because the trial judge refused to allow into evidence the victim's statement to a testifying police officer. The victim, who had died prior to trial, had spoken with the deputy approximately 19 hours after he (the victim) was attacked. The trial judge said this was hearsay. The Supreme Court disagreed, stating that while hearsay is generally excluded, it should be admitted if it is reliable and trustworthy and its exclusion would interfere with a defendant's right to present a defense.
In a concurring opinion, Justice Harry Lemmon wrote:
"I write separately only to emphasize that this is a very unusual case which necessitates an exception to the usual rules of evidence... Such exceptions should be very rare and should be sparingly applied ..."
Two justices[1] dissented in Gremillion, being of the opinion that the victim's statement was properly excluded. A third justice[2] dissented without assigning reasons.
One year later, in State v. Trahan, 576 So.2d 1 (La.1990), the Supreme Court, repeating Justice Lemmon's words, said that the exception to the hearsay rule allowed in Gremillion was an unusual exception and should be sparingly applied.
In Hill's case, the trial judge excluded Sylve's statement because the defense hadn't shown that it was reliable and trustworthy and because her statement wasn't corroborated by other credible evidence. There was no other testimony about Jackson having two guns and there was only weak evidence of someone other than Hill firing a weapon. Also, her opinion that Gilmore was shot by accident had little if any probative value.
Considering the guidelines enumerated in Gremillion and Trahan and the discretion permitted a trial judge, we cannot say the exclusion of Sylve's statement because of hearsay was error. Sylve was merely a witness who couldn't be found. The unique and unusual circumstances present in Gremillion were absent.
Hill's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Justices Jack Crozier Watson and Walter Marcus.
[2] Justice Luther Cole.