673 So.2d 1061 (1996)
STATE of Louisiana
v.
Terry D. CAMPBELL.
No. CR94-1140.
Court of Appeal of Louisiana, Third Circuit.
March 13, 1996.
*1063 J. William Pucheu, Ville Platte, Richard Phillip Ieyoub, Baton Rouge, Richard W. Vidrine, Villa Platte, for State.
Richard V. Burnes, Alexandria, Raymond J. LeJeune, Mamou, for Terry Campbell.
Before PETERS, AMY and SULLIVAN, JJ.
SULLIVAN, Judge.
This second degree murder case is before this court on remand from the Supreme Court of Louisiana. The defendant, Terry Campbell, was convicted of second degree murder and sentenced to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. He appealed to this court and assigned eleven trial court errors. In our prior opinion, State v. Campbell, 94-1140 (La.App. 3 Cir. 3/1/95); 651 So.2d 412, we determined that the trial court erred in denying Campbell's motion to quash the indictment on the basis that he, a white man, lacked standing to claim discriminatory treatment of blacks in the selection of grand jury foremen in Evangeline Parish. This court concluded that Campbell had standing to pursue third-party equal protection claims in the context of grand jury foremen selection. We remanded the case to the trial court for a full evidentiary hearing on the matter.
The state applied for a writ of certiorari to the Supreme Court of Louisiana. On October 2, 1995, the supreme court granted the writ and reversed this court's decision. It determined that Campbell lacked standing to present a discrimination claim on behalf of the excluded black potential grand jury foreman. The supreme court remanded the case to this court for consideration of the defendant's ten remaining assignments of error. State v. Campbell, 95-0824 (La. 10/2/95); 661 So.2d 1321.

FACTS
Preliminarily, we note that the defendant, Terry Campbell, suffered a head injury on August 6, 1986. As a result, the defendant had a portion of his brain surgically removed. Consequently, the defendant now suffers from organic brain syndrome, chronic pain syndrome and epileptic seizures.
The defendant was separated from his wife, Susan Campbell, on the date of the incident. On January 11, 1992, Susan Campbell was dropped off at her house by James Sharp after a night out with friends. After Mrs. Campbell entered her house, the defendant shot Mr. Sharp through the window of Mr. Sharp's van. Mr. Sharp allegedly tried *1064 to run over the defendant in the van. Mr. Sharp tried to drive away from the scene but wrecked his vehicle in a neighbor's yard, where he died at the scene. The defendant was subsequently arrested and charged with second degree murder, in violation of La.R.S. 14:30.1.
Campbell was indicted by a grand jury. On March 6, 1992, defendant appeared in court with counsel for arraignment and entered a plea of not guilty. Defendant thereafter filed a Motion to Change Plea from Not Guilty to Not Guilty by Reason of Insanity. On July 16, 1992, the court granted defendant's motion, rearraigned the defendant, and granted the state's motion to appoint a sanity commission. On January 8, 1993, defendant appeared in court for a sanity hearing. The defense and state agreed to stipulate to medical reports in lieu of the doctors' testimony. Based on the reports, the court ordered the defendant to be admitted to East Feliciana Hospital for further evaluation.
A second sanity hearing was held on June 11, 1993. Evidence was introduced and arguments were presented. The court determined that the defendant had the capacity to proceed and assist counsel in his defense. The state moved to have two doctors from the East Feliciana Hospital examine the defendant to determine his mental capacity at the time of the offense. The court ordered the state to prepare an order. On November 23, 1993, the defendant orally moved to limit the number of expert witnesses, which motion was denied by the court. On December 2, 1993, the defendant filed a Motion to Quash the Grand Jury Indictment, which motion was denied by the court. Arguments were also heard on defendant's Motion to Suppress Inculpatory Statements, which motion was also denied by the court.
Trial by jury began on December 6, 1993. The defense stipulated that the defendant shot the victim, Mr. Sharp. On January 12, 1994, the state and the defendant jointly moved for a mistrial. The trial court granted the motion. A second trial by jury began on May 9, 1994. Defendant re-urged his Motion to Suppress, which motion was denied by the trial court. On May 12, 1994, the jury returned a unanimous verdict of guilty as charged. On May 20, 1994, the defendant was sentenced to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence.
As mentioned, Campbell's first assignment of error was found to lack merit by the supreme court. Defendant's remaining assignments of error are as follows:
1. The trial court erred in ruling on the issue of defendant's present capacity to proceed for the reason that the defendant's mental disease or defect and his lack of capacity to understand the proceedings against him and assist in his defense remained with him throughout the proceedings and exist to this date.
2. The trial court erred in overruling defendant's written Motion to Prohibit Two (2) Compelled Psychiatric Examinations by Two (2) Separate Doctors Served on Defendant Less Than One Month Prior to His Second Degree Murder Trial, and in overruling defendant's oral Motion to Limit Expert Witnesses.
3. The trial court erred in overruling defendant's written Motion to Suppress Inculpatory Statements and Supplemental Motion to Suppress.
4. The trial court erred in ruling during the course of the trial on defendant's oral Motion to Suppress Inculpatory Statements (which was renewed during the course of the trial) and the expanded oral Motion to Suppress Inculpatory Statements (which was made on the grounds that the warrant was issued without probable cause).
5. The trial court erred when it refused to give defense requested jury charges number 2, 3, 4 and 5, all of which requested that negligent homicide be defined and be given to the jury as a responsive verdict which it could consider and return.
6. The trial court erred when it refused to give defense requested jury charge number 7 which was wholly correct and required in order to clarify ambiguity and inaccuracies which existed in *1065 the general charge on intent which was given to the jury.
7. The trial court erred when it overruled defendant's written objections to the proffered general jury charges which said objections were tendered to the Court timely in a document entitled "Defense Objections to Proffered General Jury Charges." More specifically, the court's charge defining manslaughter was incomplete and inaccurate and referred to enumerated and non-enumerated felonies in R.S. 14:30 and R.S. 14:30.1 when the court's general charge did not specify the enumerated or non-enumerated felonies nor did the court's general charge define the enumerated or non-enumerated felonies. Consequently, the jury did not have a full and fair definition of manslaughter and could not have adequately considered that verdict.
8. The trial court erred in failing to sustain defendant's objections to the proffered general jury charges.
9. The trial court erred in overruling defendant's motion for new trial.
10. The trial court erred in overruling defendant's motion for post verdict judgment of acquittal.
Our review of the record reveals that all of Campbell's remaining assignments of error lack merit. Accordingly, for the following reasons, the defendant's conviction and sentence are affirmed.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant contends the trial court erred in ruling on the issue of defendant's present capacity to proceed for the reason that the defendant's mental disease or defect and his lack of capacity to understand the proceedings against him and assist in his defense remained with him throughout the proceedings and exist to this date.
Defendant's argument depends on the testimony of Dr. Charles Fontenot, a member of the sanity commission who found the defendant incompetent to assist counsel at trial, and the testimony of Dr. Phillip Landry, who was also on the sanity commission. Dr. Landry concluded "that his attorney might be at a disadvantage in putting up a defense for him based on what ... seemed to be some pretty profound memory problems."
Dr. Fontenot, Coroner of Evangeline Parish, examined the defendant on July 22, 1992. The defendant told Dr. Fontenot that he did not remember the actual shooting but he did remember the events around the shooting, such as the incident happening in his wife's driveway and the victim being in a vehicle. Dr. Fontenot was of the opinion that the defendant understood right from wrong at the time of the incident. Dr. Fontenot testified that because the defendant could not remember the actual shooting, the defendant might have a hard time assisting his attorney. Dr. Fontenot recommended that the defendant not stand trial at that time but that he be hospitalized at a state hospital until such time that they felt his memory had improved to the point where he could stand trial. However, Dr. Fontenot was of the opinion that the defendant knew right from wrong at the time he examined him.
Dr. Landry, a psychiatrist in Opelousas, testified that his examination revealed that the defendant did not remember details of the incident but did "have a vague recollection that someone had attempted to run over him and that some individual had apparently brought his wife home on the night that this incident occurred." Dr. Landry noted that the defendant had driven himself to the office, was appropriately dressed, and did not seem distressed. The defendant had no trouble remembering the three different medications he was taking as well as the different doses. However, Dr. Landry did note that the defendant had a significant impairment of memory. Dr. Landry felt that the defendant understood the nature of the charges against him and could appreciate the seriousness of the charges. As pointed out by the defendant, Dr. Landry felt that an attorney "might be at a disadvantage in putting up a defense for him based on what, at least in the office, seemed to be some pretty profound memory problems." However, Dr. Landry did state that he felt "that he could go ahead with trial." Dr. Landry was also of the opinion that the defendant had the ability *1066 of distinguishing a plea of guilty from a plea of not guilty and was able to maintain a consistent defense and make simple decisions in response to well-explained alternatives.
Dr. Richard Gibson, an expert in the field of medicine and psychiatry, examined the defendant at East Feliciana Hospital and also determined that the defendant was capable of standing trial.
The twofold test of mental capacity to stand trial under La.Code Crim.P. art. 641 is set out in State v. Williams, 381 So.2d 439 (La.1980). The court must determine (1) whether the accused fully understands the consequences of the proceedings and (2) whether he has the ability to assist in his defense by consultation with counsel. The defendant bears the burden of proving by a clear preponderance reasonable grounds for the judge to believe that he is mentally defective or was at the time of the offense. State v. Vincent, 338 So.2d 1376 (La.1976). The final determination of a defendant's competency to stand trial rests with the trial judge and not the medical examiners. It is a legal and not a medical issue. State v. Quails, 377 So.2d 293 (La.1979). The trial judge's determination of competency to stand trial is entitled to great weight and will not be disturbed on appeal absent a showing of manifest error. State v. Brown, 414 So.2d 689 (La.1982).
The trial court did not commit manifest error in determining that the defendant had the capacity to stand trial. Both members of the sanity commission were substantially in accord. Although Dr. Fontenot recommended that the defendant be hospitalized until his memory improved, he agreed with Dr. Landry that the defendant knew right from wrong at the time of the examination. Although the defendant alleges that he does not remember the facts of the shooting, and this fact if true may somewhat hinder his assistance to counsel, this fact alone should not have prevented the defendant from going to trial.
For the foregoing reasons, we find the trial judge did not err as the defendant failed to meet his burden of proving that he did not have the capacity to proceed to trial. Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
This assignment of error was abandoned by the defendant.

ASSIGNMENTS OF ERROR NOS. 3 and 4
These assignments of error have been combined by the defendant in his brief. Therefore, we will address them together.
By these assignments of error, the defendant contends that the trial court erred in overruling his Motion to Suppress Inculpatory Statements and Supplemental Motion to Suppress as well as his oral Motion to Suppress Inculpatory Statements and expanded oral Motion to Suppress Inculpatory Statements. Defendant cited several reasons for these assignments, including that the arrest warrant was issued without probable cause. However, he failed to argue the lack of probable cause issue in brief. Pursuant to rule 2-12.4 of the Uniform RulesCourts of Appeal, we consider this portion of the assigned error to be abandoned by Campbell. We shall therefore only address the remaining issues raised by the defendant.
Ville Platte Police Chief L.C. Deshotel testified at trial that an arrest warrant was issued for the defendant charging him with second degree murder. The warrant appointed Gary Ortego to represent the defendant, "representation to begin immediately." Defendant was subsequently arrested at Cypress Hospital in Lafayette. The defendant was advised of his rights and booked into the Lafayette Parish Correctional Center. When the defendant was transferred from Lafayette Parish to the custody of Police Chief Deshotel and Evangeline Parish Sheriff's Deputy Jack Aucoin, he was again advised of his rights. Chief Deshotel stated that they did not attempt to question the defendant as they were instructed by Judge Aucoin not to do so. On the way to the Evangeline Parish jail, the defendant made several spontaneous inculpatory statements.
The defendant was advised of his Miranda rights by Deputy Aucoin, who read from a preprinted card. At the end of the Miranda card, there are two questions. One asks if *1067 the defendant understood his rights and one asks if the defendant, after being informed of these rights, would like to make a statement. Chief Deshotel testified that the defendant stated that he understood his rights but he did not hear the defendant say that he wished to talk.
Deputy Aucoin testified that he read the defendant his Miranda rights. The defendant acknowledged that he understood his rights. When Deputy Aucoin asked the defendant if he wished to talk to them the defendant said "no." Deputy Aucoin testified that the defendant made certain inculpatory statements to him and Chief Deshotel and at no time did they question the defendant as they were instructed not to do so.
Defendant argues that his Fifth Amendment rights were violated because he did not knowingly and intelligently waive his right to remain silent. Defendant contends that both "Chief Deshotel and Deputy Aucoin were aware or should have been aware that he could not make a knowing, intelligent and voluntary waiver of his right to remain silent due to his mental disease or defect." Defendant points out that no written waiver of his right to remain silent was introduced into evidence.
Defendant's "mental disease or defect" does not prevent him from making a knowing and intelligent waiver of his rights. The issue is whether the defendant had the mental capacity and was able to understand the rights explained to him. See Brown, 414 So.2d 689. Both Chief Deshotel and Deputy Aucoin testified that the defendant acknowledged that he understood his rights as they were explained to him. While being read his rights, the defendant interrupted and told the law enforcement officers that he knew his rights. Deputy Aucoin finished reading the defendant his rights and then asked the defendant if he understood his rights. The defendant acknowledged that he did. Deputy Aucoin further testified that neither he nor Chief Deshotel told the defendant anything or did anything to induce him to make these statements. Besides making several inculpatory statements, the defendant carried on a conversation with Chief Deshotel about hunting, thus leading one to believe that the defendant had his faculties and was able to understand the rights explained to him.
Dr. Jimmie Cole, a clinical psychologist who examined the defendant at Cypress Hospital, agreed with defense counsel's assertion that the defendant's "mental condition [was] such that it would have significantly affected the voluntariness and knowing and intelligent making of a statement on the date he was taken from the hospital." Cypress Hospital, however, allowed the defendant to sign a "formal voluntary admission" when he entered the hospital. Dr. Cole testified that a person would not be admitted unless they had the mental capacity to make such a "voluntary admission themselves."
We conclude that Campbell had sufficient mental capacity to understand the rights explained to him. He twice told the law enforcement officers that he understood his rights. No countervailing credible evidence indicates that Campbell was incapable of understanding his rights.
We next turn to the issue of whether he knowingly and intelligently waived those rights. After being read his rights, Campbell told Deputy Aucoin that he did not wish to speak, thereby invoking his right to silence. He thereafter voluntarily made inculpatory statements. We must decide if, by doing so, Campbell knowingly and intelligently waived his right to remain silent. In that regard, the supreme court in State v. Loyd, 425 So.2d 710, 716 (La.1982) explained as follows:
[The United States Supreme Court] concluded that the admissibility of statements obtained after the person in custody has decided to remain silent depends on whether his "right to cut off questioning" was "scrupulously honored." Through the exercise of his option to terminate questioning, he can control the time of when questioning occurs, the subjects discussed, and the duration of questioning. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. Michigan v. Mosley [sic] [423 U.S. 96, 102-04], *1068 96 S.Ct. [321] at 326, 46 L.Ed.2d [313] at 321 [(1975)].
. . . .
... Miranda recognizes that the Fifth Amendment only protects against some kind of compulsionand not the kind produced by custody alone. In the absence of police interrogation, the coercion of arrest and detention does not rise to the level of "compulsion" within the meaning of the privilege. Kamisar, Brewer v. Williams, Massiah and Miranda: What is "Interrogation"? When Does it Matter?, 67 Georgetown L.J. 1, 50-53, 63-69 (1978).
[Emphasis added.]
In the case sub judice, Campbell's inculpatory statements were made of his own volition and not in response to interrogation by Chief Deshotel or Deputy Aucoin. Clearly, under the precepts of Michigan v. Mosley, these officers scrupulously honored Campbell's right to cut off questioning. He cannot now assert that his right to remain silent was violated, because no further interrogation occurred. Campbell apparently changed his mind and voluntarily decided to make the statements at issue. Nothing in Miranda prevents a defendant from changing his mind about giving a statement. State v. Daniel, 378 So.2d 1361 (La.1979); State v. Taylor, 490 So.2d 459 (La.App. 4 Cir.), writ denied, 496 So.2d 344 (La.1986).
For these reasons, defendant's claim of a Fifth Amendment violation lacks merit.
The defendant also contends that his Sixth Amendment right to counsel was violated as both Chief Deshotel and Deputy Aucoin were aware that the judge who signed the arrest warrant appointed an attorney at that time. Defendant directs this court's attention to Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), in which the United States Supreme Court held that a defendant who, after asserting his right to counsel, made incriminating statements after further interrogation did not waive his right to counsel, and that those inculpatory statements were obtained in violation of the Sixth and Fourteenth Amendments. In Brewer, the Supreme Court found that prior to the interrogation, steps in the prosecution had already commenced and, therefore, the defendant's Sixth Amendment rights had already attached. This finding distinguishes Brewer from the case at hand. This case is more properly compared to Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), in which the United States Supreme Court held that even when an attorney had been contacted by a defendant's family member without the defendant's knowledge, and the attorney was hindered in his attempt to meet with the defendant by law enforcement, the defendant's confession was still admissible assuming a valid waiver. In reaching this conclusion, the Supreme Court specifically found that the prosecution had not yet commenced and therefore, the defendant's Sixth Amendment rights had not yet attached.
Although an attorney was appointed for the defendant as part of the arrest warrant and the defendant was informed of his right to have an attorney appointed, neither Chief Deshotel nor Deputy Aucoin informed the defendant that an attorney had been appointed. Defendant contends that, once a defendant has an attorney, "the sole contact between the state and the defendant should be through the defendant's counsel." We do not find that the protection of the defendant's Sixth Amendment rights requires such a procedure. See State v. Carter, 94-2859 (La. 11/27/95); 664 So.2d 367.
Therefore, we do not find that the defendant's Sixth Amendment right to counsel has been violated in that it had not yet attached when the spontaneous inculpatory statements were made. Even assuming for argument that his right had attached, we still find that, based on the decision in Carter, his right has not been violated.
Accordingly, these assignments of error are meritless.

ASSIGNMENT OF ERROR NO. 5
By this assignment of error, the defendant contends the trial court erred in refusing to give requested jury charges numbers two, three, four and five all of which requested that negligent homicide be defined and be given to the jury as a responsive verdict to *1069 consider. The trial court declined to give the requested charges and, instead, gave the general jury charges. Defendant objected.
La.Code Crim.P. art. 802(1) requires the court to instruct the jury as to the law applicable to the case. When properly requested to do so, the court is obligated to charge the jury as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Jackson, 450 So.2d 621 (La.1984).
Defendant directs this court's attention to State v. Williams, 606 So.2d 1387, 1389 (La. App. 2 Cir.1992), wherein the second circuit held:
Under LSA-C.Cr.P. Art. 814, negligent homicide is not a responsive verdict to second degree murder. However, in cases involving various grades of murder, such as first degree murder, second degree murder, or manslaughter, when there is evidence from which the jury can infer that the defendant is guilty of negligent homicide, the trial court should charge the jury with the defendant's requested special charges on the law of negligent homicide. State v. Vergo, 594 So.2d 1360 (La.App. 2 Cir.1992); State v. Gray, 430 So.2d 1251 (La.App. 1st Cir.1983).
In Williams, evidence was presented that the victim and the defendant "tussled" just prior to the gunshot. Thus, the second circuit concluded that the jury could have found the gun discharged accidentally. Accordingly, it was reversible error for the trial court not to instruct the jury on the law of negligent homicide.
If a negligent homicide instruction is indicated by the evidence in the case, the omission of the instruction may be harmless error. Id. The court's failure to instruct on negligent homicide is prejudicial to the defendant only if the jury has insufficient information to understand that if he was guilty of only negligent homicide, it should find him not guilty of the charged offense. Id.
The only evidence presented supporting the negligent homicide jury charge is Campbell's own self-serving testimony that Mr. Sharp allegedly tried to run him over with a van. We conclude that this testimony alone is not sufficient to provide the jurors with a reasonable basis from which to infer from the evidence that negligent homicide applies. Therefore, the trial court did not err in declining to give the requested jury charge on negligent homicide. Because we find no error, we necessarily do not reach the harmless error analysis.

ASSIGNMENT OF ERROR NO. 6
By this assignment of error, defendant contends the trial court erred when it refused to give defense's requested jury charge number seven, which he alleges was wholly correct and required in order to clarify ambiguity and inaccuracies which existed in the general charge on intent.
In charging the jury on the law applicable to the present case, the trial judge stated:
The following are the essential facts required to be proved beyond any reasonable doubt in order to justify a verdict of guilty of Second Degree Murder.
1. That the defendant, Terry D. Campbell, killed James L. Sharp in Evangeline Parish, Louisiana;
2. That the defendant, Terry D. Campbell, acted with the specific intent to kill or to inflict great bodily harm.
Intent implies premeditation. Criminal intent exists when the act from which the crime results was done willfully. It is a mental attitude which is made known by acts. It is not susceptible of proof, but it must be implied from the proven acts of a reasonable person.
When the word intent is qualified by prefixing to it the word specific, it means that the intent was directed towards the accomplishment of a particular or definite act. Again, intent implies premeditation, and specific intent implies premeditation with reference to the commission or [sic] a particular or definite act.
In criminal law premeditation means a design or a preconceived plan to commit a crime. It denotes the will and deliberate and continued persistence to commit a crime.

*1070 With reference to the crime of murder it is immaterial whether the specific intent or premeditation existed for a brief or great length of time before the killing. It is sufficient that it existed only a moment prior to the commission of the act which resulted in the killing. As to murder, the law indicates no definite time within which a specific intent to kill must be formed so as to make the killing murder. The specific intent may have existed a moment antecedent to the act itself which caused the death, or a day or another period of time.
Specific intent or premeditation may be implied from certain acts; for example, when it is established that an accused laid in wait for his or her alleged victim; when an accused made previous threats against the deceased; when there existed between the defendant and the deceased former grudges; when an accused arms himself or herself beforehand, or from any other facts observable by the senses, which show a previously planned scheme to commit a crime.
Specific intent or premeditation, may also be implied when there are not external signs of it beyond the mere fact of the killing. For instance, when there was no lawful reason for it; and when the killing is without provocation, or upon so slight provocation as to not justify it.
The defendant argues the court's jury instructions do not indicate that "criminal intent must exist at the same time as the acts of the defendant."
We disagree with the defendant's assessment. The trial judge adequately stated that "[c]riminal intent exists when the act from which the crime results was done willfully.... When the word intent is qualified by prefixing to it the word specific, it means that the intent was directed towards the accomplishment of a particular or definite act.... It is sufficient that it existed only a moment prior to the commission of the act which resulted in the killing." Taken as a whole, the trial court's instructions were sufficient. "When the instruction given is not erroneous, in view of the context of the overall charge, no error occurs." State v. Douget, 507 So.2d 283, 289 (La.App. 3 Cir.), writ denied, 513 So.2d 288 (La.1987). Defendant's requested intent instruction was incorporated in the trial court's jury charge when it related to the jury that it must find the defendant "acted with the specific intent to kill or to inflict great bodily harm" in order to justify a verdict of guilty of second degree murder.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 7
By this assignment of error, the defendant contends the trial court erred when it overruled his objections to the proffered general jury charges. Specifically, he argues that the court's charge defining manslaughter was incomplete and inaccurate and referred to enumerated and non-enumerated felonies in La.R.S. 14:30 and La.R.S. 14:30.1 but did not specify or define the enumerated or non-enumerated felonies.
Defendant argues that because an incomplete definition of manslaughter was given, the jury could not have adequately considered that verdict. Thus, defendant claims the jury was left only with the choice of finding him guilty of the greater charge of second degree murder.
In State v. Henry, 449 So.2d 486, 488-89 (La.1984), the Supreme Court of Louisiana stated:
[A]lthough the court must charge the jury of the law applicable to lesser included offenses ... the charges must be pertinent; there must be evidence which would support a conviction of the lesser offenses. A trial judge is required "to charge the jury as to the law applicable to the case, under which he is required to cover every phase of the case supported by the evidence, whether or not accepted by him as true."
[Citations omitted; footnote omitted.]
In the present case, the defendant alleges he did not have the specific intent to commit the crime as he was legally insane at the time of the offense. In State v. Hill, 93-405 (La. App. 5 Cir. 3/29/94), 636 So.2d 999; writ denied, 94-3144 (La. 9/1/95), 658 So.2d 1259, the court held that the trial court did not err in failing to instruct the jury on the second section of the manslaughter statute, La.R.S. *1071 14:31(2). The court reasoned that the trial judge was of the opinion that the specific intent was what Hill's defense was based on; therefore, the second paragraph of La.R.S. 14:31 was not relevant. Accordingly, the court held that the defendant was not deprived of any substantial right.
Unlike Hill, the defendant in the present case objected to the jury charge as given. However, as in Hill, Campbell's defense was based on a lack of intent, albeit due to his alleged insanity. Therefore, the second paragraph of La.R.S. 14:31 was likewise not relevant. We find that Campbell was therefore not deprived of any substantial right.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 8
By this assignment of error, defendant asserts the trial court erred in failing to sustain his objections to the proffered general jury charges. Defendant contends for the reasons argued in assignments of error numbers five, six and seven the objections should have been sustained. This assignment is repetitive and the merits thereof have been addressed.

ASSIGNMENTS OF ERROR NOS. 9 and 10
These final assignments of error are interrelated. As such, we shall address them together.
By these assignments of error, the defendant contends the trial court erred in denying defendant's Motion for New Trial and Motion for Post Verdict Judgment of Acquittal. In his motion for new trial, defendant asserted eleven reasons for the granting of a new trial. Defendant urged two reasons for the granting of a post verdict judgment of acquittal. Defendant states in brief that many of the issues in both motions were argued in assignments of error numbers one through nine or were abandoned. Accordingly, defendant only argues in brief grounds one, two and eleven of the motion for new trial, and both grounds for his post verdict judgment of acquittal. He alleges that a new trial should have been granted because the verdict is contrary to the law and evidence, he was incapable of distinguishing between right and wrong at the time of the offense and the ends of justice would be served by granting him a new trial.
Motion for New Trial
La.Code Crim.P. art. 851 provides, in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
. . . .
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
When ruling on a Motion for New Trial, the trial court must apply the "thirteenth juror" standard and review the weight of the evidence. On review, the appellate court determines if the trial judge abused his discretion. If the motion is granted, the state has one year within which to retry the case unless a longer period is available under the statutory period for the particular offense. La.Code Crim.P. arts. 582 and 578.
In State v. Washington, 614 So.2d 242, 244 (La.App. 3 Cir.), writ denied, 619 So.2d 575 (La.1993), this court stated:
In State v. Landry, 524 So.2d 1261 (La. App. 3 Cir.1988), writ granted in part, writ denied in part, 531 So.2d 254 (La.1988), appeal after remand, 546 So.2d 1231 (La. 1989) [sic], this court held that a trial judge, in reviewing the merits of a motion for a new trial must review the weight of the evidence, and make a factual determination as a thirteenth juror. This court further stated that, except for an error of law, an appellate court may not review the granting or denial of a new trial under La.C.Cr.P. art. 858 citing State v. Robinson, 490 So.2d 501 (La.App. 4 Cir.1986), *1072 writ denied, 495 So.2d 303 (La.1986). In so holding, this court reasoned that the trial judge's statement indicating that he agreed with the jury's interpretation of the evidence showed compliance with the "thirteenth juror" standard of reweighing the evidence, as outlined in Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). As a result this court found there was no error of law.
In the instant case, however, the trial judge did not specifically mention what standard he used in determining the merits of the defendant's motion for new trial. Thus, as the trial judge did not indicate otherwise, we will assume for the purposes of this review that the trial judge properly applied the "thirteenth juror" standard in making his determination on the merits of the motion for new trial.
This court implied in Landry that, except for an error of law, an appellate court may not review the granting or denial of a new trial citing La.C.Cr.P. art. 858 and Robinson. However, Robinson clearly states a denial of a motion for a new trial, urged on the ground that the verdict is contrary to the law and evidence, is reviewable only for abuse of discretion. Robinson at 505.
Additionally, the denial of a motion for new trial based on La.Code Crim.P. art. 851(5), in the interest of justice, is not subject to review on appeal. State v. Prudhomme, 532 So.2d 234 (La.App. 3 Cir.1988), writ denied, 541 So.2d 871 (La.1989). Therefore, we shall not address ground number eleven of Campbell's motion for new trial, which was based upon serving the ends of justice.
As in Washington, 614 So.2d 242, the trial judge did not specifically mention on the record that he applied the "thirteenth juror" standard in evaluating Campbell's motion. On ground number one, based on La. Code Crim.P. art. 851(1), the trial judge stated that "the court is ruling that the verdict is not contrary to the law and evidence within the intendment of the law and jurisprudence." On ground number two, which was based on the issue of insanity at the time of the offense, the trial judge stated that "the jury apparently found that the evidence did not preponderate in favor of the defense of insanity at the time of the offense and the court is not going to change that." The trial judge's failure to specifically state that, in evaluating defendant's motion, he became the "thirteenth juror," does not necessitate a finding that he applied the wrong standard. In the absence of any evidence to the contrary, we assume for purposes of this review that the trial judge properly applied the "thirteenth juror" standard. We infer from the substance of the above-cited trial court rulings, indicating that the jury's decision was correct, that the trial judge applied the correct standard.
On ground number one, the defendant offered no real evidence to contest the credibility of witnesses to the circumstances surrounding the shooting or the law enforcement officials who heard the voluntary inculpatory statements made by the defendant after the shooting. We therefore conclude that the trial court did not abuse its discretion in denying the motion for new trial on ground number one, that the verdict was contrary to the law and evidence.
We shall next consider whether the trial court abused its discretion by denying the motion for new trial as to ground number two, defendant's sanity at the time of the offense. The defense presented the testimony of five physicians, all of whom concluded that Campbell was incapable of distinguishing right from wrong at the time of the commission of the offense. Of these doctors, only Dr. Cole can be considered as having been Campbell's treating physician, having first treated him in 1986. The state, on the other hand, presented the testimony of four expert physicians who uniformly agreed that Campbell could distinguish right from wrong at the time of the commission of the offense. Clearly, therefore, the credible evidence and testimony conflicted on this issue.
A review of the colloquy at the hearing on Campbell's motion for new trial reveals that defense counsel argued that, in view of the strong opinions expressed by defense experts, the jury erred in failing to find that Campbell proved his insanity by a preponderance *1073 of the evidence. The assistant district attorney argued that the jury correctly made a factual determination based on the experts' testimony and the circumstances surrounding the shooting.
The jury heard the opinions of nine experts, five for the defense and four for the state. All, except Drs. Cole and Donald Harper, had never examined the defendant until after the incident. A defendant is presumed sane and "has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence." La.Code Crim.P. art. 652. When a defendant presents evidence in an attempt to establish his insanity at the time of the offense, the state is not required to offer any proof of his sanity nor is it required to offer evidence to rebut that presented by the defendant. Rather, the determination of whether defendant's evidence rebuts the sanity presumption is made by the trier of fact (in this case, the jury) viewing all of the evidence including expert and lay testimony, defendant's conduct, and his actions in committing the particular crime. State v. Bell, 543 So.2d 1013 (La.App. 3 Cir.1989), and the cases cited therein. As stated, in considering a motion for new trial, the trial judge, as the thirteenth juror, must apply these same rules to his evaluation of the evidence.
Under the circumstances presented in this case, we conclude that the trial judge did not abuse his discretion in refusing to change the apparent jury finding that the evidence did not preponderate in favor of the insanity defense at the time of the shooting. The expert testimony was clearly in conflict. We cannot say that, in reevaluating the evidence, the trial judge erred in reaching the same conclusion as did the jury.
Motion for Post Verdict Judgment of Acquittal
La.Code Crim.P. art. 821 provides:
A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
In reviewing a denial of a motion for post verdict judgment of acquittal, an appellate court in Louisiana is controlled by the standards enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) for reviewing the sufficiency of the evidence to support a conviction. In State v. Joseph, 619 So.2d 1229, 1233 (La.App. 3 Cir.), writ granted on sentencing issue, 629 So.2d 360 (La.1993), this court stated:
This standard, which was adopted by the legislature in enacting La.C.Cr.P. art. 821, pertaining to postverdict motions for acquittal based on insufficiency of evidence, is that the court must determine that the evidence, viewed in the light most favorable to the prosecution, was insufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
It is the role of the factfinder to weigh the respective credibility of witnesses, and therefore the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d *1074 559 (La.1983) citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Second degree murder, as applicable to the case sub judice, is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. La.R.S. 14:30.1(A)(1).
On May 12, 1994, a jury returned a unanimous verdict of guilty as charged. At defendant's first trial, it was stipulated that the defendant shot the victim, James Sharp. No such stipulation was made at the second trial. The evidence at the second trial consisted of several inculpatory statements the defendant made in the presence of Police Chief L.C. Deshotel and Deputy Jack Aucoin while they were transporting the defendant from the Lafayette Parish Correctional Center to Evangeline Parish.
Both Chief Deshotel and Deputy Aucoin testified that the defendant was read his Miranda rights yet continued to make several inculpatory statements without being prompted. Both testified the defendant said:
What would you do if someone tried to pass over you with a van.
I sure made a big mistake.
I told Dr. Cole that I wished it was me and not that man.
Where is my gun? Boy that .357 is a nice shooting gun.
I just jumped out of the way. He tried to run over me so I shot him. All I wanted to do was to talk to the man, but he tried to run over me. I am sorry for what I did. I only wanted to scare him.
The victim, James Sharp, was out on the evening of January 11, 1992 with Susan Campbell, the estranged wife of the defendant. Mr. Sharp dropped Mrs. Campbell off at her home, whereupon Mrs. Campbell went inside. Although the defendant was still married to Mrs. Campbell, they were separated at the time and the defendant was residing with his sister. While exiting Mrs. Campbell's driveway, Mr. Sharp was shot through the window of his van. Glass from the window was found in Mrs. Campbell's driveway. Mr. Sharp drove a short distance into the yard of a neighbor and wrecked into a gas meter. Mr. Sharp died at the scene.
Although no gun was ever produced, a box of .357 bullets was found in the defendant's truck. The victim died as a result of a single gunshot wound from a large caliber bullet.
The evidence, when viewed in a light most favorable to the prosecution, was sufficient to find the defendant guilty of the crime charged.
For the purposes of the Motion for Post Verdict Judgment of Acquittal, the trial court correctly determined that the jury did not err in determining that Campbell was sane at the time of the commission of the offense. The jury was presented with nine expert witnesses, four of whom concluded that the defendant was capable of distinguishing right from wrong at the time of the offense. The jury weighed the respective credibilities of the witnesses and the circumstances of the offense. It returned a unanimous verdict of guilty.
The question of whether defendant has affirmatively proved his insanity and should not be held responsible for his actions is one for the jury. State v. Marmillion, 339 So.2d 788 (La.1976). All of the evidence, including both expert and lay testimony, and the actions of the defendant, should be considered by the jury in determining sanity. State v. Pravata, 522 So.2d 606 (La.App. 1 Cir.), writ denied, 531 So.2d 261 (La.1988); Bell, 543 So.2d 1013. It is for the jury to consider both the expert and lay testimony given and to determine whether it believed that the defendant had successfully rebutted the presumption that he was sane at the time of the offense. See State v. Parker, 416 So.2d 545 (La.1982).
The defendant claimed that he was insane at the time of the offense. In Louisiana, both by statute and jurisprudence, an adult defendant is presumed to be sane and responsible for his actions. La.R.S. 15:432; State v. Guidry, 450 So.2d 50 (La. App. 3 Cir.1984), writ denied, 476 So.2d 344 (La.1985). "A defendant may rebut this presumption by showing, by a preponderance of the evidence, that he was suffering from a *1075 mental disease or defect which rendered him incapable of distinguishing right from wrong with reference to the conduct in question." State v. David, 425 So.2d 1241, 1244 (La. 1983). See La.Code Crim.P. art. 652.
Although it is undisputed that the defendant suffered from a mental disease or defect, the jury, having unanimously found the defendant guilty, apparently concluded that his mental disease or defect did not render him incapable of distinguishing right from wrong at the time of the offense. A rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was legally insane at the time of the offense. Given the conflicting nature of the medical testimony and the factual circumstances surrounding the offense, we conclude that the trial court did not abuse its discretion in denying defendant's motion for post verdict judgment of acquittal.

ERRORS PATENT
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
In accordance with this article, we review appeals for errors patent on the face of the record.
La.Code Crim.P. art. 880 provides that, when imposing sentence, the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Jones, 607 So.2d 828 (La.App. 1 Cir.1992), writ denied, 612 So.2d 79 (La.1993).

DECREE
For these reasons, the defendant's conviction and sentence are affirmed. The case is remanded for the trial court to amend the sentence as instructed in this opinion.
AFFIRMED AND REMANDED.