542 So.2d 1074 (1989)
STATE of Louisiana
v.
Douglas R. GREMILLION.
No. 88-K-1956.
Supreme Court of Louisiana.
May 1, 1989.
Opinion May 4, 1989.
Rehearing Denied June 2, 1989.
*1075 Glenn G. Cortello, Alexandria, for applicant.
William J. Guste, Jr., Atty. Gen., Charles Wagner, Dist. Atty., Michael Shannon, Asst. Dist. Atty., for respondent.
Opinion of Justice Lemmon May 4, 1989.
*1076 DIXON, Chief Justice.
Douglas R. Gremillion was convicted by a jury of manslaughter (R.S. 14:31)[1] and sentenced to serve eighteen years at hard labor. On appeal, the conviction and sentence were affirmed. State v. Gremillion, 529 So.2d 497 (La.App. 3rd Cir.1988). We granted writs, and now reverse the defendant's conviction.
During the early morning hours of February 7, 1987, the defendant was drinking at the Chalet Lounge in Alexandria with the victim's ex-wife, Susan Dupuy. The victim, Robert Dupuy, was also present in the bar. Earlier in the evening, Dupuy and Susan were involved in an argument which led to threats by Dupuy, and he knocked a drink out of her hand. In addition Dupuy had threatened William Swain, who was dancing with Susan earlier in the evening, and warned him to stay away from her. As Dupuy was leaving the bar, he turned around and had words with the defendant and Susan, threatening defendant's life. As Dupuy stepped back (defendant claims that he reached into his coat pocket as if to pull out a gun), the defendant punched him in the face, sending him crashing between some tables. As Dupuy lay unconscious on the ground, the defendant stomped him several times in the chest and abdomen. There was also evidence that Susan kicked him several times. The defendant was restrained by several patrons of the bar who grabbed him, and he was eventually escorted out of the bar. Once outside, the defendant waited to continue the fight, but was persuaded by some friends to go home.
When Dupuy regained consciousness, he left the bar and drove a friend home. Several hours later he checked into the Alexandria Veteran's Hospital complaining of severe abdominal pains. He gave a statement to an attending physician and later to a police officer explaining the events of the evening, apparently being unable to identify his attackers. Dupuy and the defendant had been close friends having known each other for approximately eleven years. Dupuy was diagnosed as having traumatic pancreatitis; despite two surgical procedures he died on February 25, 1987.
Defendant has raised twenty-two assignments of error by the trial court, but since we find merit in Assignments 10, 11, 12, 13 and 14, it is unnecessary to discuss the others.
In these assignments of error the defendant contends that the trial court erred in refusing to allow into evidence a statement made by Dupuy to Deputy Bowden, the police officer who investigated the crime and interviewed Dupuy at the hospital the day he was admitted. When asked by Bowden to describe his attackers, Dupuy could not say who they were, or what they were wearing, but merely described them as "three white males." Bowden was called as a witness for the defense. The defense tried several times to elicit this statement from Bowden, but was met with hearsay objections from the state, which were sustained by the trial court. While one of the objections by the state came too late, allowing Bowden to give the description, the objection was sustained and the jury was later admonished to disregard the statement.
*1077 Earlier in the trial, while the state was presenting its case, it called Dr. Balthazar, Dupuy's treating physician, as a witness. Balthazar testified about the events surrounding Dupuy's admittance and stay at the hospital. In conjunction with this testimony, the state introduced the medical records of Dupuy. Included in these records was a statement by Dupuy to the admitting physician in which he stated that he was beaten and kicked by "several others." Reading from the records, Balthazar recited this statement to the jury. Despite the hearsay nature of this statement, it was allowed into evidence by the trial court. While the two statements are not identical, they are similar in nature since in neither one did Dupuy specifically identify the defendant.
The defense attempted to introduce the statement of Deputy Bowden in an effort to present a defense theory in which William Swain, and not the defendant, inflicted the injuries upon Dupuy which eventually led to his death. To corroborate this theory, the defense called Swain as a witness to attempt to show that he had a motive for attacking Dupuy. Swain testified that he had purchased a car from Dupuy for $800, but was forced to return the car when Dupuy was unable to produce a valid title due to a community property dispute between him and Susan. The $800 had not been returned to Swain. Swain also testified that Dupuy had earlier knocked a drink out of Susan's hand while he was present and threatened him, warning him to stay away from her. It was also revealed that two of Swain's friends were with him in the bar. The defense argument was that Dupuy was beaten by Swain and two of his friends, which would have been bolstered by the statement Dupuy made to Deputy Bowden.
The trial court ruled that the statement made by Dupuy to Deputy Bowden was hearsay, and refused to allow the defense to question Bowden about it. Hearsay is an out of court, unsworn, oral or written statement by a third person, which is offered for the truth of its content. State v. Martin, 356 So.2d 1370 (La.1978). Hearsay statements are inadmissible unless they fit into one of the recognized exceptions. The defense argues that the statement should have been admitted under either the res gestae, excited utterance, business record or dying declaration exception. The defendant contends that the exclusion of the statement impaired his due process right to present a defense.
The statement Dupuy made to Deputy Bowden is hearsay and does not fit into any of the recognized exceptions to the hearsay rule. The statement was made out of court, by a declarant who was unavailable to testify. The statement was unsworn, and the defense attempted to introduce it for the truth of its content, that is, to prove that Dupuy was attacked by "three white males" and not the defendant. Defendant's claim that the statement is part of the res gestae is without merit. R.S. 15:447 provides:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
The record reveals that the statement by Dupuy was made at 9:00 p.m. on the evening following the incident at the Chalet Lounge, probably nineteen hours later. The statement was too far removed to be considered spontaneous and was more narrative than impulsive. Further, the statement is also not admissible as an excited utterance since it was made after Dupuy had time to contemplate the event, and not while he was still under the influence of a startling event. State v. Henderson, 362 So.2d 1358 (La.1978).
Defendant also claims that the statement should be admissible as a dying declaration. Dying declarations are admissible if made when the declarant is fully conscious of his condition and under a sense of impending death, after having abandoned all hope or expectancy of recovery. State v. Unger, 362 So.2d 1095 (La. *1078 1978). While there are indications that Dupuy was enduring great pain at the time he made the statement, it does not appear that he was aware of his impending death. It was not until two surgeries and seventeen days later that Dupuy died. The statement was not a dying declaration and this argument lacks merit.
Defendant also argues that the statement should be admitted under the business records exception, since the statement was recorded by Deputy Bowden in the course of his employment as a police officer. The contents of the report are based on hearsay, and are not admissible as a business record. State v. Farrar, 374 So.2d 1204 (La.1979). This argument lacks merit.
While the statement does not fit into any of the recognized exceptions to the hearsay rule, it should have, nevertheless, been admitted into evidence due to its reliability and trustworthy nature. The statement to Deputy Bowden, while not identical to the one given to the admitting physician who took Dupuy's history, was corroborated by that statement, in which Dupuy stated that he was attacked by "several others." The defendant and Dupuy were close friends, yet in two separate statements Dupuy failed to identify the defendant as his attacker. The statement indicating that Dupuy was attacked by "three white males" was given to a police officer investigating the crime, and there is no circumstance to suggest that the statement was untrustworthy. The state suggests that Dupuy may have been motivated by his friendship with the defendant when he failed to identify him as his attacker. There is no particular support for it in the record. Dupuy left the bar around 2:00 a.m., and there is no indication of his whereabouts from that time until 10:00 a.m. the next day, when he checked into the hospital. The possibility exists that Dupuy was attacked during this time, and the credibility of this defense should have been presented to the jury to assess.
While hearsay should generally be excluded, if it is reliable and trustworthy and its exclusion would interfere with the defendant's constitutional right to present a defense, it should be admitted. Louisiana Code of Evidence, art. 804(B)(6) provides:
"In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and to the court his intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it. If, under the circumstances of a particular case, giving of this notice was not practicable or failure to give notice is found by the court to have been excusable, the court may authorize a delayed notice to be given, and in that event the opposing party is entitled to a recess, continuance, or other appropriate relief sufficient to enable him to prepare to meet the evidence."
While this article specifically limits its application to civil cases, comment (d) states:
"Although the exception set forth in this Subparagraph is limited to civil cases, under certain circumstances results similar to those authorized by this exception may be mandated by the right of compulsory process when an accused in a criminal case offers reliable trustworthy evidence not fitting within the contours of a legislatively recognized exception to the hearsay rule. See Chambers v. Mississippi, 410 U.S. 284 [93 S.Ct. 1038, 35 L.Ed.2d 297] (1973); Green v. Georgia, 442 U.S. 95 [99 S.Ct. 2150, 60 L.Ed.2d 738] (1979); State v. Webb, 424 So.2d 233 (La.1982); State v. Washington, 386 So. 2d 1368 (La.1980)."
Defendant's primary defense was that the injuries causing Dupuy's death were not inflicted by him. Defendant has a constitutional *1079 right to present a defense. La. Const. art 1, § 16. The credibility of this statement and the defense's theory should have been placed before the jury, who could have been cautioned by proper instructions as to the weight to be given to the statement. By not allowing the defendant to place this statement before the jury, the trial court impermissibly impaired his right to present a defense to the crime with which he was charged. State v. Washington, 386 So.2d 1368 (La.1980).
For these reasons, the conviction and sentence of the defendant are reversed and the case is remanded to the district court for a new trial in accordance with this opinion.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
COLE, J., dissents.
WATSON and MARCUS, JJ., dissent and assign reasons.
LEMMON, Justice, assigning additional reasons.
This decision clearly reaches the correct result. A defendant's "right to present a defense" under La. Const. art. I, § 16 sometimes requires the admission of hearsay evidence when there has been a strong showing of trustworthiness and necessity. The hearsay information in this case, which came straight from the victim's mouth to an unsuspicious witness at a critical point in time, could not have been more trustworthy and reliable.[1] It was also essential to Gremillion's defense since the declarant-victim had died and was unavailable. In the statement the victim described his attackers, who had caused him to seek medical attention many hours after the beating by Gremillion, as three unknown white males, clearly identifying persons other than Gremillion. Whether the cause of the victim's death was the earlier blows administered by Gremillion or the injuries inflicted by those unknown assailants, and whether such an attack in fact occurred, were issues which Gremillion had a right to submit to the jury.
I write separately only to emphasize that this is a very unusual case which necessitates an exception to the usual rules of evidence on the basis of the Louisiana constitutional right to present a defense.[2] Such exceptions should be very rare and should be sparingly applied, inasmuch as La.C.Evid. art. 804B(6) (applicable to proceedings after January, 1989) generally prohibits the admissibility in criminal cases of hearsay evidence which does not fall under a legislatively recognized exception to the hearsay rule.[3]
WATSON, Justice, dissenting:
Dr. McGarry, Professor of Pathology at the L.S.U. School of Medicine and a pathologist for the Orleans Parish Coroner's Office, testified that the cause of Dupuy's death was multiple organ failure due to acute traumatic pancreatitis. Dr. McGarry described the injury as the result of a compression type blow, or stomping action from above, directed into the center of the upper abdomen.
Gremillion denied stomping Dupuy. The jury found this evidence not credible because it was contradicted by three disinterested witnesses who saw what happened.
David Partain testified he saw Gremillion's foot raise and lower two times in a stomping or kicking motion in the area where Dupuy had fallen. Walter Starks, *1080 Jr. testified that he saw Gremillion stomp Dupuy two or three times. Frank Maddox was sitting in a chair that Dupuy hit as he fell. Being next to Dupuy's body, Maddox had a clear view of Gremillion stomping Dupuy four or five times in the chest and stomach. Gremillion outweighed Dupuy by about 30 pounds. Maddox said that Gremillion was not just holding Dupuy down but was stomping Dupuy with "enough force to hurt him."[1] The evidence was sufficient for a rational trier of fact to conclude that Gremillion either caused, or contributed to, Dupuy's injuries.
Defense counsel was able to establish that Swain had a motive for fighting with Dupuy; that he was accompanied by friends who could have helped beat Dupuy; and that Dupuy had threatened Swain. The defense used and the jury heard Dupuy's statement that "several others" had administered the beating. Deputy Bowden was unable to secure an arrest warrant after his visit with Dupuy because Dupuy did not name a culprit, even though he and Gremillion knew each other well. Although instructed to disregard it, the jury heard Bowden repeat Dupuy's statement to him.
Despite the trial court's previous ruling, defense counsel's closing argument included Dupuy's statement that "three unidentified white males beat him up."[2] Since there was no objection by the state,[3] the trial court did not instruct the jury to disregard the statement.[4] Counsel candidly admitted in oral argument that the jury was well aware of the "three white males" theory of the defense.
The majority's thinly reasoned theory for reversing this case, where the evidence is overwhelming, is that although hearsay, the statement should have been admitted "... due to its reliability and trustworthy nature." This description is dead wrong. The victim appeared to have been knocked out with Gremillion's first blow; he could hardly know who stomped him. As for the idea that someone beat him later, not only is there not a shred of evidence to suggest such a theory, but even if true, the eyewitness evidence would convict defendant regardless; if two people brutally stomp a victim who later dies, both are guilty.
Under these circumstances, the majority errs in reversing the conviction. There is no reasonable doubt that Gremillion caused Dupuy's death by stomping on his prone body. Any error in excluding Dupuy's statement to Bowden was harmless.
I respectfully dissent.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that the statement given to Deputy Bowden was admissible under La.Code of Evidence, art. 804(B)(6). La. Acts 1988, No. 515, § 12(2) provides that the code shall govern proceedings commenced on or after the act's effective date of January 1, 1989. The trial in this case commenced on July 7, 1987, well before the act's effective date. Accordingly, art. 804(B)(6) of the code is not applicable in this case. Even if the code were applicable, the statement given to Deputy Bowden would not fall under art. 804(B)(6)'s exception. The article is clearly designed to apply in civil cases. Although comment (d) suggests the exception may be available in criminal cases, comment (b) states that the "exception is to be available only in truly extraordinary circumstances." The cases cited in comment (d) are illustrations where the hearsay statements were of such value that their exclusion would work a grave injustice on the criminal defendant. Such is not the case here. Finally, even if the statement were admissible, its exclusion does not rise to the level of reversible error. The jury was able to get the gist of the statement from medical records and from defense counsel's closing argument, neither of which was objected to by the state. Accordingly, I respectfully dissent.
NOTES
[1] "Manslaughter is:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years." R.S. 14:31.
[1] The statement nearly qualifies as a declaration against pecuniary interest. Since the victim knew defendant, he certainly endangered his ability to collect civil damages from his assailants by asserting his inability to identify them. See La.C.Evid. art. 804B(3).
[2] It is unfortunate that the issue of the admissibility of the hearsay evidence was not raised prior to trial, when either side could have sought review by supervisory writs of the ruling of the district court before the trial and conviction. Fed.R.Evid. 803(24) and 804B(5) recognize the so-called "omnibus" exception, but require notice to the adverse party in advance of trial. See also La.C.Evid. art. 804B(4).
[3] This case does not hold that Article 804B(6) extends to criminal cases when the defendant offers the evidence. Nevertheless, La. Const. art. I, § 16, which is the basis for admitting the evidence, protects only the defendant's right to present a defense and not the state's right to present its case.
[1] Tr., Vol. 1, p. 155.
[2] Tr., Vol. 2, p. 402.
[3] Tr., Vol. 2, p. 411,
[4] Tr., Vol. 2, p. 417.