658 So.2d 198 (1995)
STATE of Louisiana
v.
Patricia VAN WINKLE.
No. 94-K-0947.
Supreme Court of Louisiana.
June 30, 1995.
*199 Bruce Gerard Whittaker, New Orleans, for applicant.
Richard P. Ieyoub, Atty. Gen., John M. Mamoulides, Dist. Atty., Leigh Anne Wall, Terry Boudreaux, Gretna, for respondent.
NORRIS, Justice Pro Tem.[1]
Patricia Van Winkle was indicted for the second degree murder of her son, 12-year-old Patrick Van Winkle. La.R.S. 14:30.1. A 12-member jury found her guilty of manslaughter. La.R.S. 14:31. The District Court sentenced her to 21 years at hard labor with credit for time served. The Court of Appeal affirmed. State v. Van Winkle, *200 93-843 (La.App. 5th Cir. 3/16/94), 635 So.2d 1177. We granted writs, 94-0947 (La. 10/7/94), 644 So.2d 624, and now reverse and remand for a new motion to suppress and a new trial on the merits.

Factual background
The facts, insofar as they are essential to our discussion, are as follows. In July 1991 Ms. Van Winkle, age 34, was living in a 4-plex on Terry Parkway in Gretna with her two children, 12-year-old Patrick and four-year-old Charlene, and a roommate, 20-year-old Darrell Hurst. Patricia and Darrell were not romantically involved; he paid her $60 a week in rent.
On the afternoon of Saturday, July 13, Patricia called 911 to report that Patrick was not breathing. Deputies arrived to find him lying on his bed, face-down. There were cuts and lacerations on his arm, neck and chest, and tufts of hair were clutched in his hand. Lividity showed that he had died some hours earlier and lain on his back much of the time. On the floor near the bed was a knife and on the wall were small splatters of blood. Although the room was messy and suggested that a struggle had occurred, there was no evidence of forced entry.
Patricia, Charlene and Darrell were all taken to the Detective Bureau. Over the next several days Patricia underwent intensive questioning about her son's death. She was initially booked for criminal negligence and cruelty to a juvenile; on July 14, she was placed on suicide watch. On Monday morning, July 15, she went to Magistrate Court for a 72-hour hearing. Later she was formally charged with second degree murder. During her time in custody, she gave five recorded statements to deputies and one unrecorded remark to Dep. Pernia.[2] In none of these did Patricia ever admit killing her son; she maintained that she was asleep in her bedroom with Charlene at the time. The State argued, however, that in each successive statement she displayed a greater familiarity with the facts. The unrecorded remark, elicited when Dep. Pernia erroneously told her that the hair in Patrick's hand matched Patricia's, was "it was a manslaughter."
The autopsy showed that Patrick's knife wounds were superficial; the deputy coroner testified that he died by suffocation. She also found dilation of his anus, but noticed no recent trauma to the rectal area. She took oral and anal swabs to determine if there had been any recent sexual activity; the forensic pathologist testified that these disclosed only the possible presence of seminal fluid, but no sperm. Other forensic evidence was provided by Dr. West, a dentist and controversial "wound pattern analyst" from Hattiesburg, Mississippi. He testified that markings on Patrick's stomach were consistent with the soles of tennis shoe hiking boots seized from Patricia's bedroom. A defense expert, Dr. Singer, contested this, finding there was no reasonable correlation between Patrick's bruise pattern and the boot in Patricia's room.
Darrell testified that he had gone to bed sometime after 1:00 a.m. Saturday, but was wakened about 3:00 or 4:00 by noises from Patrick's room: a "holler," like someone being hurt, and a loud thumping noise, "like somebody running." In spite of this racket, he testified, he rolled over, went back to sleep, and did not get up until after noon. Darrell also testified that he was "close" to Patrick, having watched him and Charlene while Patricia was at work, and had told Patrick about life and about girls. In a statement to the police, Darrell had stated that Patricia was not strong enough to kill Patrick.
The defendant tried to show, through the testimony of a bartender at The Roundup, a "hustler bar," that Darrell was a regular customer there and had been seen leaving the bar with another man. Another witness testified that early Saturday morning, he saw leaving Patricia's 4-plex a man matching the description of the man seen with Darrell. The District Court, however, prohibited the *201 defense from asking numerous questions about Darrell's sexual orientation, what kinds of activities went on at a "hustler" bar, and from probing whether the results of the anal swab tests could disprove that he had been sexually abused prior to his death. The defense theory was that Patrick was killed by Darrell, probably with the help of a homosexual lover, accidentally or otherwise.
The State's theory, advanced in rebuttal closing argument, was that Patricia got up in the middle of the night and put on the tennis shoe hiking boots in order to walk across the street to a convenience store for more beer; but when Patrick, who disapproved of her drinking, heard her, they got into an argument; angered, Patricia fetched the knife, went to Patrick's room, stood on the bed and stomped on his chest, then knelt on him and stabbed him; finally, to drown out his screaming, held a pillow over his face with one hand while strangling his throat with the other. In so doing, she suffocated him.
As noted, the jury returned the responsive verdict of manslaughter; the Court of Appeal affirmed. Ms. Van Winkle now appeals, advancing three assignments of error:
(1) The trial court erred in denying her motion to suppress her statements obtained in violation of State v. Hattaway, 621 So.2d 796 (La.1993);
(2) The trial court erred in denying her the opportunity to present a defense and cross examine her accusers; and
(3) The trial court erred in prohibiting her from presenting evidence as to her mental condition bearing on the weight to be given the various statements obtained from her.
Because we find merit in the second assignment, we reverse and remand for a new trial in accordance with this opinion. Because of the procedural posture of the case, we include instructions to hold an evidentiary hearing on the motion to suppress as well.

Discussion
By her second assignment Patricia urges the trial court wrongly denied her the opportunity to present her defense and to cross examine her accusers. Her defense theory was that Darrell was a homosexual hustler who frequented the French Quarter and that he and another man killed Patrick intentionally or accidentally during forced or attempted homosexual activity. To this end she sought to prove first that her son had been anally penetrated at some point in time, and second that Hurst was in fact a homosexual "hustler." Specifically, she complains that the trial court erroneously prohibited her from asking Darrell questions about his sexual orientation and activities, as well as his source of income; from asking the State's chemist, Ms. Williams, why the absence of sperm in the anal swabs containing seminal fluid did not necessarily disprove sexual intercourse; from questioning the deputy coroner, Dr. Garcia, about the condition of the victim's anal orifice, in order to show recent sexual conduct[3]; from asking Keith Hebert, a bartender at The Roundup, what he meant by describing the bar as a "hustler" bar; and from asking Ken Petite, another Roundup bartender, if the bar's clientele was predominantly gay or if men met other men there. The Court of Appeal found no error in restricting the cross examination of Darrell as "there was no proof that any type of homosexual activity had occurred[.]" The Court also found the restricted questioning of the State's chemist proper, as she was allowed to testify that a man may ejaculate without leaving sperm, owing to medical problems. In short, the Court found no support of the claimed limitations on cross examination or interference with Ms. Van Winkle's right to present a defense.
We disagree. A criminal defendant has the constitutional right to present a defense. U.S. Const. amend. 6; La. Const. Art. 1 § 16; Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Gremillion, 542 So.2d 1074 (La.1989); State v. Vigee, 518 So.2d 501 (La.1988). Due process affords the defendant the right of full confrontation and cross examination of the State's witnesses. Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); State v. Mosby, 595 So.2d 1135 (La. *202 1992). It is difficult to imagine rights more inextricably linked to our concept of a fair trial.
Evidentiary rules may not supersede the fundamental right to present a defense. In State v. Gremillion, supra, the defendant attempted to introduce evidence that third parties, rather than the defendant, had killed the victim. The evidence consisted of a statement that the victim had made to a sheriff's deputy who investigated the crime. The statement was that he had been attacked and beaten by three white males. The trial court and the Court of Appeal both held the statement was inadmissible hearsay. We agreed that the statement was hearsay and that it did not meet any applicable exception (res gestae, dying declaration, business records). However, we concluded that normally inadmissible hearsay may be admitted if it is reliable, trustworthy and relevant, and if to exclude it would compromise the defendant's right to present a defense. See Chambers v. Mississippi, 410 U.S. at 302, 93 S.Ct. at 1049. Exclusion of the statement in Gremillion impermissibly impaired the defendant's fundamental right. 542 So.2d at 1079, citing State v. Washington, 386 So.2d 1368 (La. 1980).
Similarly, in State v. Vigee, supra, we held that hearsay evidence supporting the defendant's theory of the case and undermining the State's lead witnesses was relevant; excluding it mandated reversal. The defendant may always assert that someone else committed the crime. Chambers v. Mississippi, supra; State v. Ludwig, 423 So.2d 1073 (La. 1982).
The facts here are quite simple. A 12-year-old boy was murdered at home; his body appeared to be penetrated anally, and his underwear was stained with blood. Analysis of the oral and anal swabs yielded, in our view, confusing results. The defense showed that Darrell was an unrelated male living in the victim's home, was not sexually involved with the boy's mother and was present at the time of the murder. From this the defendant theorized that he is homosexual and that he, along with a homosexual partner, killed the boy. The defense tried to show from the autopsy that the victim was the target of homosexual activity. It also tried to show that Darrell frequented gay bars, and successfully placed him in such a bar on numerous occasions in the company of and leaving with another adult male. A defense witness testified that he saw this other adult male leaving the victim's apartment on the morning of the murder.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.Ev. art. 401. On this record, we are constrained to find that the contested portions of Ms. Van Winkle's questioning of Ms. Williams, the State's chemist, Dr. Garcia, the deputy coroner, and Darrell Hurst, the lead fact witness, were relevant to establishing her defense theory. By abridging the cross examination of these witnesses, the trial court impaired Ms. Van Winkle's constitutional right to present a defense. Chambers v. Mississippi, supra; cf. State v. Mosby, supra.
We are also constrained to find a reasonable possibility that the excluded evidence might have contributed to the conviction, and its exclusion was not harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 22-23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Given the equivocal nature of Ms. Van Winkle's statements and of the forensic evidence, the State's case was circumstantial; the defense theory, if properly presented, may well have been sufficient to plant reasonable doubt in the jury's mind. For these reasons, the conviction must be reversed and the case remanded for a new trial. Because Ms. Van Winkle was previously convicted of manslaughter, she may not be retried for any greater offense. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); State v. Clark, 231 La. 807, 93 So.2d 13 (1957); State v. Magouirk, 539 So.2d 50 (La.App.2d Cir.1988), recalled in part, appeal after remand 561 So.2d 801 (La. App.2d Cir.), writ denied 566 So.2d 983 (1990).

*203 Other assignments

In spite of our disposition on the second assignment, we find it necessary to address, because of the procedural posture of the case and the goal of judicial economy, Ms. Van Winkle's first assignment. State v. Edwards, 420 So.2d 663 (La.1982). By this assignment Ms. Van Winkle urges the trial court wrongly denied her motion to suppress statements allegedly taken in violation of this court's holding in State v. Hattaway, supra. The instant record, however, is insufficient for us to determine exactly what occurred at the 72-hour hearing on the morning of Monday, July 15. This information is, obviously, critical to a full analysis of the issue. On remand, therefore, we direct the District Court to hold a new hearing on the motion to suppress to determine whether or not counsel was appointed for Ms. Van Winkle before she gave her last two recorded statements and the oral remark to Dep. Pernia. If the court finds that counsel was indeed appointed before these statements were given, then the court is to consider this fact in ruling on the motion in accord with the applicable jurisprudence. Each side naturally may seek supervisory review to the Court of Appeal of the District Court's decision on this matter.
By her third assignment Ms. Van Winkle argues the District Court erred in prohibiting her from presenting evidence as to her mental state when she gave the various statements. La.C.Cr.P. art. 703 F, G. Obviously, if certain of the statements are inadmissible because of a denial of right to counsel, this assignment becomes largely moot. If, however, the statements are used, then the defendant is entitled to introduce "evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given to the confession or statement." Art. 703 G.

Conclusion
For the reasons expressed, Ms. Van Winkle's conviction is reversed and set aside, and the case remanded to the District Court for a new motion to suppress and then a new trial on manslaughter charges in accordance with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice Pike Hall, Jr.

Dennis, J., not on panel. Rule IV, Part 2, § 3.
[2] The fourth and fifth recorded statements, as well as the oral remark to Dep. Pernia, occurred after the 72-hour hearing.
[3] A photograph in evidence shows the victim's anus to be very obviously dilated.