851 So.2d 330 (2003)
STATE of Louisiana
v.
Jerry HALL.
No. 2002-KA-1701.
Court of Appeal of Louisiana, Fourth Circuit.
June 25, 2003.
*331 Harry F. Connick, District Attorney Leslie Parker Tullier, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III and Judge TERRI F. LOVE).
JOAN BERNARD ARMSTRONG, Judge.

STATEMENT OF THE CASE
The defendant, Jerry Hall, was charged by bill of information on April 9, 2001, with one count of armed robbery in violation of La. R.S. 14:64. The defendant pleaded not guilty at his April 12, 2001, arraignment. On June 5, 2002, a twelve-person jury found the defendant guilty as charged. On June 10, 2002, the defendant was sentenced to thirty years at hard labor without the benefit of parole, probation or suspension of sentence. On that same date, the State filed a multiple bill, and the defendant filed an oral motion for appeal, which the trial court granted. On July 25, 2002, after a multiple bill hearing, the defendant was found to be a second felony offender. The trial court vacated its previous sentence of thirty years and re-sentenced the defendant to forty-nine years and six months without benefit of probation, *332 parole or suspension of sentence. The defendant now appeals.[1]

STATEMENT OF THE FACTS
Noel Reimonenq, an independent Sunbeam bread distributor, testified that on December 26, 2000, after he made a delivery to K & M grocery store two individuals robbed him of sixty-six dollars. Mr. Reimonenq further testified that the two individuals grabbed him from behind as he left the store. One of the individuals wore a yellow jacket and blue jeans, and the other wore a black hooded jacket. The individual in the yellow jacket took out a gun and demanded the money. Mr. Reimonenq complied and gave them the money he had. The two men then demanded that Mr. Reimonenq get in his truck with them, but he refused. The individual in the yellow jacket pointed the gun at Mr. Reimonenq who pushed it away. The individual in the yellow jacket then fired a shot at Mr. Reimonenq before the two ran away. Mr. Reimonenq identified the defendant in open court as the man who wore the yellow jacket and held the gun.
Detective David Hunter, of the New Orleans Police Department, testified that he conducted a follow-up investigation into the robbery of Mr. Reimonenq at the K & M grocery store. On the day of the robbery Detective Hunter interviewed Mr. Reimonenq and Mike Esmail, the owner of the grocery store. Mr. Esmail later testified at trial that as Mr. Reimonenq arrived to make his delivery he left his store to run an errand. As Mr. Esmail left the store he saw twins Jerry and Terry Hall standing on the side of his store wearing yellow and black jackets. Mr. Esmail gave Detective Hunter the names of the twins. As a result, Detective Hunter created a photo line-up. Detective Hunter had Mr. Reimonenq view the photographs, and he identified the defendant as the person who wore the yellow jacket and held the gun.
Terry Hall, the defendant's brother, testified that he and the defendant were in New Orleans East at the time of the robbery. He further testified neither he nor his brother own yellow or black jackets.
Mary Hall, the defendant's mother, testified that she spoke to the defendant on her cell phone on the day of the robbery. According to the witness, the defendant said he was at his father's home in New Orleans East.

ERRORS PATENT
Our review of the record reveals one error patent to wit: the minute entry of the multiple bill hearing does not reflect that the defendant's sentence was imposed without the benefit of parole, probation or suspension of sentence. However, the transcript of the proceedings reflects that the sentence was imposed without benefits. When there is a discrepancy between the transcript and the minute entry, the transcript controls. State v. Beard, 547 So.2d 7 (La.App. 4 Cir.1989). Pursuant to La. R.S. 15:301.1 if the statutory restrictions had not been recited at sentencing they would have been included automatically.

ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant contends that the trial court erred when it restricted the defendant's right to present a defense, and commented on defense and state evidence in the presence of *333 the jury, which deprived the defendant of a fair trial.
To support his claim of denial of a fair trial, the defendant cites several instances in the trial court proceedings. The defendant argues he was prejudiced by the trial court's refusal to allow his alibi witness to testify in plain clothes rather than prison attire. In State v. Marcelin, 94-2432, p. 3 (La.App. 4 Cir. 1/31/96), 669 So.2d 497, 498, this court rejected a similar argument, stating, "[o]nly sheer speculation supports the theory that this defendant was deprived of a fair trial because his witness, whom the jury would legitimately learn was a convicted felon, would lose his credibility because of his appearance in shackles." See also State v. Washington, 95-771 (La.App. 5 Cir. 2/14/96), 670 So.2d 1255.
In the instant case, the defendant has cited no cases nor has he shown how he was directly prejudiced by the witness's attire.
The defendant then cites as an error the trial court's continuous sustaining of the State's objections to the defense's opening statement as argumentative, and the trial court's continual interference in defense counsel's cross-examination of a State witness and allowing the introduction of hearsay evidence.
A criminal defendant has the constitutional right to present a defense. Due process affords the defendant the right of full confrontation and cross-examination of the state's witnesses. State v. Van Winkle, 94-0947, p. 5 (La.6/30/95), 658 So.2d 198, 201.
[D]efense should be allowed substantial freedom in cross-examining state witnesses. But the trial court may curtail such freedom when the questions asked are irrelevant or immaterial to the case. Questions are of material issue if they are of importance to the case. Questions are relevant if they tend to prove or negate the commission of the offense and the intent. Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. (Citations omitted)
State v. Short, 94-0233, p. 4 (La.App. 4 Cir. 5/16/95), 655 So.2d 790, 792-793.
A conviction will not be overturned where the defendant does not show that he was prejudiced by a limitation of the cross examination of a witness. State v. Revere, 572 So.2d 117 (La.App. 1 Cir.1990).
In the instant case, the defendant points to the cross-examination of State witness Detective David Hunter. The defendant contends that the trial court's interference prevented the presentation of the defense of mistaken identity. However, the defense seems to spend a majority of the cross-examination questioning Detective Hunter on how the photo line-up was prepared. Defense counsel begins to question the officer about the possibility of another suspect named Brian, but then drops that line of questioning to focus on the photo line-up. The defendant has failed to show how the trial court's sustaining of the State's objections has prejudiced him.
The defendant points to the trial court's admittance of hearsay evidence as an error.
La. C.E. art. 801(C) defines hearsay as a statement, other than one made by the declarant while testifying at the present trial or hearing, offered into evidence to prove the truth of the matter asserted. When hearsay evidence has been improperly admitted at trial, the error is deemed to be reversible and not harmless unless the appellate court determines, beyond a reasonable doubt, that the improperly admitted evidence did not contribute *334 to the verdict. State v. White, 559 So.2d 541 (La.App. 2 Cir.1990).
During direct examination of Detective David Hunter the following exchange took place:
State: Detective Hunter, I want to take you back to the 26th day of December of the year 2000. Did you have occasion to respond to a signal 64(G)?
Witness: Yes, sir, I did. At that time I was assigned as a robbery investigator in the 5th District.
State: What happened when you responded to that signal?
Witness: I met with the initial officer, Officer Dalton, the uniform officer that handled it. She briefed me on what she had. I learned that a Mr. NoelI'm going to ruin his last nameReimonenq, was the victim of a robbery in front of K & M food store located at Mazant and Derbigny. And that she had tentatively or she had identified two suspects in the case. And she had gone to the residence where these suspects lived but they were not there.

* * *
During re-direct examination of Detective Hunter the following exchange took place:
State: Detective, when you went to the first house, who were you looking for? Witness: The uniform officers went to both houses, sir, but they were looking for
Defense: Objection.
Court: Overruled.

* * *
During the direct examination of state witness Mike Esmail the following exchange took place:
State: Was he able to give you a description of who had perpetrated this awful crime against him?
Witness: Yes, ma'am.
State: What description did he give you?
Defense: Objection, your honor.
Court: Overruled.
The statements admitted by the trial court appear to be hearsay because the witnesses testified about the actions or statements of someone else, and not from their personal knowledge. However, the admission of the statements was harmless error because the verdict was not based on the hearsay evidence. The victim testified that he saw the gunman's face as he demanded his money. Additionally, the victim was able to identify the defendant in a photo line-up and in court as the perpetrator.
The defendant complains the trial court made belittling comments to defense counsel. The judge is attributed with making two comments, which were:
Court: And I would sustain that objection.
* * *
Court: Well, we don't know what she's asking he's aware of. Aware of what Miss Taylor?
Neither of these comments were belittling.
The defendant also complains that the trial court did not allow the defense to present the alibi testimony of the defendant's brother Terry Hall. Specifically, he contends that the witness misunderstood the question, and therefore was prevented from giving testimony as to the defendant's whereabouts, and the trial court prevented the defense the opportunity to clarify the question by sustaining the State's objections. During the direct examination of Terry Hall by the defense the following exchange took place:

*335 Defense: Let me refreshLet me see if you can remember this date. December 26, 2000, was the day after Christmas two years ago, nearly two years ago, about a year and a half ago.
Witness: Yes, I remember.
Defense: Were you and your brother living at your mother's home at that time?
Witness: Yes, ma'am.
Defense: And who else lived at the address along with you, your brother Jerry, and your mother?
Witness: My mama's boyfriend, Kenny Wells, and my uncle, Charles Ross.
Defense: Were you at home at that address on the morning of December 26, 2000?
Witness: Yes, ma'am.
Defense: Did you see your brother Jerry that morning?
Witness: Yes, ma'am.
* * *
Defense: As clearly as you can remember, will you tell us what you remember about that morning, December 26, 2000?
Witness: Well, December 25, which was Christmas day, me and my brother was together. We went out in New Orleans East to visit my dad. And we both come back home together December 26.
Defense: I'm sorry, I said December 26. I may have sounded as if I said the 25th. What do you recall about the morning of December 26, the day after that Christmas in 2000?
Witness: Well, December 26 we both were home, December 26th. My brother, he have a girlfriend who stays in the next block where he goes a lot, often.
Defense: And did you have a chance to wake up with your brother on the morning of December 26?
Witness: Yes, ma'am.
Defense: Did you go out to New Orleans East to visit your father on that day?
Witness: Yes, ma'am.
Defense: Can you tell me what time you left the house to go see your dad that morning, December 26?
Witness: I'm sorry, I don't remember what time we left.
Defense: Did you ever come to find out that your brother, Jerry, was charged with an offense that was supposed to have occurred on December 26, 2000?
Witness: No, ma'am.
Defense: You're not aware that your brother here is charged with the crime that was supposed to have occurred on December 26, 2000?
State: Asked and answered, Your Honor.
Court: Asked and answered.
During the re-direct examination of Terry Hall the following exchange took place:
Defense: So, Mr. Hall, you remember seeing your brother on December 26 in the morning of December 26 now?
Witness: Yes, ma'am.
* * *
Court: We've been through all of this. This is nothing you can cover or [sic] redirect. We're [sic] been through all of this and we're not going to repeat everything that we've done.
Defense: Your Honor, it was addressed on cross. It was addressed on cross. She brought it out.
Court: No, I'm sorry my language is wrong. On redirect, we're not going to deal with the same stuff again. They've heard all of it and we're not going through that same stuff again. If there's something new, you can deal *336 with something new. Or something new that they brought out, you can deal with some of that.
The witness, Terry Hall, was allowed to testify as to his brother's whereabouts on the morning of December 26. The trial court only prevented the defense counsel from asking the same questions on the subject to prevent repetition of evidence.
The defense argues that the trial court commented on the testimony of Mary Hall and prevented testimony that would have impeached testimony given by the victim.
La.C.Cr.P. art. 772 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
La. C.E. art. 607(D)(2) provides:
Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
Defense counsel argued that Ms. Hall's testimony would be used to impeach the trial testimony of the victim. The victim denied being unable to identify the defendant at a pretrial hearing. Defense counsel attempted to question Ms. Hall, who was present at the hearing, as to whether the victim was unable to identify the defendant at that time. In response to the State's objection, the court asked counsel if she had a transcript of the prior hearing, and defense counsel never admitted that one existed. Thus, it is unclear that this "non-identification" actually occurred. In addition, the trial court noted that the defense had the opportunity to question the victim on cross-examination on this point and failed to do so. Therefore, the trial court did not err in prohibiting the defense from pursuing this line of questioning. There is no merit to this assignment of error.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant notified this court of his desire to file a pro se supplemental brief and requested that a copy of the appellate record be forwarded to him. On April 9, 2003, this court forwarded a copy of the appellate record to the defendant and granted defendant forty-five (45) days from the date of the issuance of the order in which to file a pro se brief, but none was ever filed.