# STATE OF LOUISIANA

# COURT OF APPEAL

## FIRST CIRCUIT

* * * * * * *

## 2020 KA 1072

### STATE OF LOUISIANA

### VERSUS

### JOSEPH ANDREW ST. ROMAIN, JR.

JUDGMENT RENDERED: **OCT 2 1 2021**

* * * * * * *

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Livingston • State of Louisiana
Docket Number 34954 • Division C

The Honorable Robert H. Morrison, III, Presiding Judge

* * * * * * *

| | |
|---|---|
| Martin E. Regan, Jr.<br>Ravi Shah<br>Harry Ward<br>New Orleans, Louisiana | COUNSEL FOR APPELLANT<br>DEFENDANT—Joseph Andrew<br>St. Romain, Jr. |
| Scott Perrilloux<br>*District Attorney*<br>Zach Daniels<br>Kurt Wall<br>David Guidry<br>*Assistant District Attorneys*<br>Livingston, Louisiana | COUNSEL FOR APPELLEE<br>State of Louisiana |

* * * * * * *

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

McClendon, J. concurs without reasons

**WELCH, J.**

The State of Louisiana charged the defendant, Joseph Andrew St. Romain, Jr., by bill of information with attempted first-degree murder, a violation of La. R.S. 14:27 and La. R.S. 14:30 (count I), and armed robbery with the use of a firearm, a violation of La. R.S. 14:64 and La. R.S. 14:64.3 (count II). He pled not guilty on both counts. Following a jury trial, on count I, ten of twelve jurors found him guilty of the responsive offense of aggravated battery, a violation of La. R.S. 14:34; and on count II, he was found guilty as charged by a unanimous verdict. The defendant moved for a new trial, which the trial court denied. On count I, the trial court sentenced the defendant to ten years at hard labor to run concurrently with the sentence on count II. On count II, the trial court sentenced the defendant to twenty years at hard labor without benefit of probation, parole, or suspension of sentence plus an additional five years at hard labor without benefit of probation, parole, or suspension of sentence to run consecutively. The defendant now appeals, claiming the trial court erred in refusing to admit the entire recorded statement of an eyewitness, challenging the sufficiency of the evidence on count II, and challenging the non-unanimous jury verdict on count I. For the following reasons, we vacate the conviction and sentence on count I, affirm the conviction and sentences on count II, and remand.

## FACTS

Jarred Stewart, the victim, testified at trial. Stewart was serving a sentence following a conviction for possession of a schedule II controlled dangerous substance. Stewart also had an earlier conviction for the same offense. Additionally, Stewart had a conviction for possession of a schedule IV controlled dangerous substance.

Stewart described how he was "shot for no reason[,]" on November 24, 2016 - Thanksgiving Day. On that date, Stewart traveled with his brother-in-law, William

2

Douglas Street, to pick up a radio at a house at the end of Louisiana Highway 1063, near a crossroads to Holden and Independence. At the house, Street exited the vehicle and went to talk to his friend with the radio (whose name the victim later learned was Josh Pinton) after Pinton arrived in a truck. Stewart then also exited to talk to Pinton about the stereo system in his truck.

Subsequently, the defendant and his brother (whose name Stewart later learned was Brandon St. Romain) drove up. The men exited their vehicle "immediately." Stewart had never interacted with either of them before. The defendant walked up "like at an angle … like he had something in his hand." The defendant asked Pinton where Pinton's children were. Pinton replied they were in the back, asleep. The defendant then "pulled a gun" on Stewart. The weapon had a lime green camouflage top and a black bottom. The defendant pointed the weapon at Stewart and pulled back the slide. Stewart put his hands up and stated, "Man, what's going on? What's this? This is crazy." The defendant stated, "Where's my money?" The defendant then started walking toward Stewart, still pointing the weapon at him. The defendant ordered Stewart to get on his knees, and Stewart complied. The defendant also ordered Stewart to put his hands behind his head, and Stewart complied. The defendant stated, "give me your wallet," and Stewart complied. Stewart had no money in his wallet, and he never got his wallet back.

Brandon St. Romain then pulled out a revolver from his jacket, but did not point the weapon at Stewart. Thereafter, Stewart felt the defendant's gun touch the back of his right hand, which was behind his head. Stewart looked at Brandon, who was in front of him, and Brandon stated, "[the defendant is] going to fucking kill you." Stewart felt the barrel of the defendant's gun "slightly leave" his hand, and then the defendant shot him.

After being shot, Stewart put both of his hands down on the ground. The defendant then hit him in the back of the head with his gun. Stewart then "guess[ed]"

3

there was a scuffle, and Street grabbed him by the back of his pants, helped him up, and pushed him toward Street's car. Before Stewart arrived at the car, the defendant "threw" his arm around Stewart. Stewart looked at the defendant's right arm and saw he still had the gun. The defendant stated, "[m]an, it sucks falling on a knife, don't it?" Street then drove Stewart to North Oaks Hospital for treatment. As a result of the incident, Stewart lost two knuckles and the bones in the last three fingers of his right hand. Stewart was a carpenter by trade and had used his right hand to swing a hammer.

Stewart denied bringing a gun to the incident; he indicated he did not even own a gun. Stewart stated, as a convicted felon, he was not permitted to own a gun; and if he were caught with a gun, he would be charged with being a felon in possession of a weapon and go to jail. Stewart also denied that he was shot with his own weapon. Stewart further indicated he did not see Street with a weapon during the incident.

Stewart also denied using crystal methamphetamine with Street on the night of the incident. Additionally, Stewart denied having a conversation with Street concerning "having armed robbed some people the night before[.]" Stewart specifically denied committing an armed robbery of the defendant. Stewart denied that he had the gun with the camouflage slide, that he pulled the gun on the defendant, and that the defendant punched him in the face.

William Street testified at trial. Street had convictions for possession of methamphetamine, unauthorized use of a movable, and felony possession of stolen goods. Street testified similarly to Stewart concerning how Stewart and Street arrived at Pinton's house.

Street stated, at Pinton's house, when he reached out to shake the defendant's hand, the defendant pulled out a black semi-automatic gun. The defendant pointed

4

the weapon at Stewart. Street indicated he did not come to Pinton's house with a gun and that he did not see Stewart with a gun.

According to Street, the defendant told Stewart to get on his knees, stating "[Stewart] had robbed [the defendant] the night before." Street claimed Stewart "reached around and grabbed his wallet and handed it to [the defendant] and said, I didn't steal no money from you." Street stated Stewart was "broke."

Street testified the defendant opened the wallet, looked at it, and dropped it on the ground. Street stated Pinton said something, which Street did not remember, and the defendant said "[Stewart] ain't worth it anyway and hit [Stewart] with the gun. When [the defendant] hit [Stewart] with the gun, the gun went off." According to Street, when the defendant hit Stewart with the gun, Stewart fell, was "knocked out," and the gun "went off." Street indicated Stewart was "on the ground, on all fours, on his knees and his hands." Street testified he "kind of kicked" the defendant's left foot and "shoved his face." Thereafter, Street "grabbed" Stewart by his belt, "throwed" him toward Street's car, and got him out of the area.

In a statement recorded prior to trial, Street stated, "the gun went off and then I hit [the defendant] at about the same time. It's like, almost (snaps fingers) instant."

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number 2, the defendant contends the evidence was insufficient to support the conviction on count II. He argues although Stewart claimed money was taken from his wallet, Street was clear that nothing was taken, but rather Stewart was trying to explain that he could not be the person who committed an armed robbery of the defendant the previous night because he had no money. The defendant also argues Street's testimony at trial was that he punched the defendant after the defendant shot Stewart, but in a recorded statement, Street stated he punched the defendant in the head causing the defendant him to shoot Stewart. The defendant further argues Street and Stewart directly contradicted each other

5

regarding whether Stewart was shot in the back of the head. Lastly, the defendant argues Stewart's testimony concerning where the bullet entered and exited his hand was inconsistent with the testimony of the forensic pathologist, Dr. Marianna Eserman.

When issues are raised on appeal contesting the sufficiency of the evidence and alleging one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. **State v. Hearold**, 603 So.2d 731, 734 (La. 1992); **State v. Duhon**, 2018-0593 (La. App. 1ˢᵗ Cir. 12/28/18), 270 So.3d 597, 609, writ denied, 2019-0124 (La. 5/28/19), 273 So. 3d 315; see also **State v. Self**, 98-39 (La. App. 3ʳᵈ Cir. 8/19/98), 719 So. 2d 100, 101, writ denied, 98-2454 (La. 1/8/99), 734 So.2d 1229. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under **Hudson v. Louisiana**, 450 U.S. 40, 43, 101 S. Ct. 970, 972, 67 L. Ed. 2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with **Jackson v. Virginia**, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proven beyond a reasonable doubt. **Hearold**, 603 So.2d at 734; **Duhon**, 270 So.3d at 609. When the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion of trial error issues as to that crime would be pure dicta since those issues are moot. However, when the entirety of the evidence is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the other assignments of error to determine whether the accused is entitled to a new trial. If the reviewing court determines that there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused will be granted a new trial, but is not entitled to an acquittal. See **Hearold**, 603 So.2d at 734; **Duhon**, 270 So.3d at 609.

In reviewing the sufficiency of the evidence to support a conviction, a Louisiana appellate court is controlled by the standard enunciated by the United States Supreme Court in **Jackson**. That standard of appellate review, adopted by the legislature in enacting Louisiana Code of Criminal Procedure article 821, is whether the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. **State v. Freitag-Shaw**, 2006-1750 (La. App. 1st Cir. 3/23/07), 2007 WL 865421, *5 (*unpublished*).

When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. It is not the function of the appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in **Jackson**. **Freitag-Shaw**, 2007 WL 865421 at *6.

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64(A). "Anything of value" must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal, public or private. La. R.S. 14:2(A)(2). Whether or not anything of value was actually taken by the accused in an armed robbery context is a question of fact for the jury to weigh and evaluate in their consideration of the verdict. **State v. Draughn**, 2005-1825 (La. 1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S. Ct. 537, 169 L. Ed. 2d 377 (2007).

Stewart testified that he gave his wallet to the defendant after the defendant pulled a gun on him, pointed the weapon at him, ordered him to his knees, ordered him to put his hands behind his head, and demanded the wallet. Any contrary

7

testimony from Street on this or any other fact required a determination of the credibility of the witnesses and was a matter of the weight, rather than the sufficiency, of the evidence for the jury.

Stewart also testified that he had no money in his wallet and that he never got the wallet back. The taking of a wallet containing no money is still the taking of a thing of value, *i.e.*, the wallet itself. See La. R.S. 14:2(A)(2).

The alleged inconsistency between testimony from Stewart and testimony from the forensic pathologist, Dr. Eserman, concerning where the bullet entered and exited Stewart's hand was in regard to defense counsel's claim that Stewart had a "wound" at his wrist, specifically at the bottom of his palm. The defense asked Dr. Eserman to give her expert opinion on the track of the bullet that entered Stewart's hand based on medical records, photographs, and X-rays provided to her by the defense. Dr. Eserman concluded that the wound to the top of Stewart's hand was an exit wound, thereby possibly contradicting Stewart's testimony that he had his hands behind his head when he was shot. Stewart however, testified, "[t]here is not a wound … at the top of my wrist and the bottom of my palm. There is an incision that the doctor made in the center of my palm here wherever they put a plate in my hand and did surgery on it and sewed it back up." Whether the wound to Stewart's hand was an entrance or exit wound required a determination regarding the credibility of the witnesses and was a matter of the weight, rather than the sufficiency, of the evidence for the jury.

The verdict returned on count II indicates the jury regarded the "inconsistencies" the defendant references as irrelevant to the ultimate issue of his guilt. Moreover, the jury's acceptance of Stewart's testimony reflects a credibility determination that we cannot reweigh on appeal. See **Freitag-Shaw**, 2007 WL 865421 at *6. Accordingly, there was sufficient evidence to support the defendant's

8

conviction for armed robbery with a firearm. This assignment of error is without merit.

## RIGHT TO PLAY RECORDED STATEMENT

In assignment of error number 1, the defendant contends the trial court erred in refusing to admit the entire recorded statement of Street. He argues the entirety of the statement was admissible under his right to present a defense. He claims Street's statement that the incident occurred because Stewart committed armed robbery the night before was essential to explain Stewart's state of mind.

A criminal defendant's right to present a defense is guaranteed by the Sixth Amendment of the United States Constitution and Article I, §16 of the Louisiana Constitution. Evidentiary rules may not supersede the fundamental right to present a defense. See U.S. Const. amend. VI; La. Const. art. I, § 16; **State v. Van Winkle**, 94-0947 (La. 6/30/95), 658 So.2d 198, 202. However, constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence—only that which is deemed trustworthy and has probative value. See **State v. Governor**, 331 So.2d 443, 449 (La. 1976); **State v. Nixon**, 2017-1582 (La. App. 1st Cir. 4/13/18), 250 So.3d 273, 280, writ denied, 2018-0770 (La. 11/14/18), 256 So.3d 290. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. La. C.E. art. 403. Ultimately, questions of relevancy and admissibility of evidence are discretion calls for the trial court. Such determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. See **State v. Mosby**, 595 So.2d 1135, 1138-39 (La. 1992).

Defense Exhibit 4 was a November 30, 2016 recorded statement of Street given to Detective Jim Brown. At trial, the State objected to the defense asking

Street "and remember, you spoke to Detective Brown, and you thought, at this point, that [Stewart] was upset because he thought the guys from the night before were coming to get him." The court sustained the objection, ruling that "regardless of what [Street] told anybody he thought, is still without any back up. [The Defense] can ask him what he actually knows, not what he thought." The trial court found that "it is not the jury's province to listen to anything from any witness that that witness thinks some other witness may have been motivated by. That is nothing but pure speculation."

The court allowed the defense to play Defense Exhibit 4, with the exception of the last question and answer. The defense objected and moved for a mistrial. The court denied the motion. (R. 1747). The excluded question and answer were as follows:

> [Detective Brown]: In your opinion, what do you think happened here?
>
> [Street]: I think [Stewart] and whoever else was with him the night before robbed these two gentlemen and they was gonna kill him. They thought it was me, but it wasn't.

There was no clear abuse of discretion in the ruling excluding a portion of Defense Exhibit 4. The excluded material was a question by Detective Brown inviting Street to speculate, *i.e.*, "what do you think ...," and Street's speculative answer, *i.e.*, "I think ...." The defendant had no constitutional right to present the exchange, which was untrustworthy and had little, if any, probative value. Further, any probative value of the exchange was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay and waste of time. See La. C.E. art. 403; **Nixon**, 250 So.3d at 280 (no violation of the defendant's constitutional right to present a defense in prohibiting testimony from a witness concerning "what she thought she

10

knew about [a potential suspect who was later eliminated as a suspect].").  This assignment of error is without merit.

## CONSTITUTIONALITY OF NONUNANIMOUS VERDICT

In assignment of error number 3, the defendant contends he was convicted on count I by a nonunanimous jury, and thus, that conviction must be vacated under **Ramos v. Louisiana,** ___U.S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020), and he must be given a new trial.

In **Ramos,** ___ U.S. at ___, 140 S. Ct. at 1397, the United States Supreme Court overruled **Apodaca v. Oregon,** 406 U.S. 404, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972), and held that the right to a jury trial under the Sixth Amendment of the United States Constitution, incorporated against the States by way of the Fourteenth Amendment of the United States Constitution, requires a unanimous verdict to convict a defendant of a serious offense.  The **Ramos** Court further noted that its ruling applied to those defendants convicted of felonies by nonunanimous verdicts whose cases were still pending on direct appeal. **Ramos,** ___ U.S. at ___, 140 S. Ct. at 1406.  Thus, where the defendant's conviction was not final when **Ramos** was decided, the holding of **Ramos** applies.  **State v. Bueso,** 2019-01675 (La. 6/22/20), 297 So.3d 719 (*per curiam*) (citing **Griffith v. Kentucky,** 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649 (1987)); **State v. Cagler,** 2018-0427 (La. App. 1st Cir. 9/30/20), 314 So.3d 850, 851, 2020 WL 5814181, *1.  Accordingly, this assignment of error has merit.  The conviction and sentence on count I hereby are vacated, and this case is remanded to the trial court.

## DECREE

Based on the foregoing, we affirm the defendant's conviction and sentence on count II.  We vacate the defendant's conviction and sentence on count I and remand to the trial court for further proceedings consistent with the views expressed in this opinion.

11

**CONVICTION AND SENTENCE ON COUNT II AFFIRMED; CONVICTION AND SENTENCE ON COUNT I VACATED; REMANDED.**